Day v. Thompson.

LAVINIA E. DAY, APPELLEE, v. CHARLES L. THOMPSON, APPELLANT.

**Equity**: TITLE BY ATTACHMENT PROCEEDINGS. In May, 1857, one U. entered a tract of land in Douglas county, and in September of that year mortgaged one half of the same for $675, payable in eighty-seven days. The mortgage was recorded, and afterwards, on the twentieth of March, 1858, was assigned to one R., who advanced an additional sum to U. on the land, and took an assignment of the certificate. On the twelfth of April, 1858, an action by attachment was commenced against U., and the land in question attached, service being had by publication. Judgment was thereafter recovered, the lands sold, the sale confirmed, and a deed ordered, but no deed executed. In 1863, 1870, and 1876, motions requiring the sheriff to execute a deed were sustained, and a deed was made in 1876. In 1866, R. took a conveyance of the land from U., and in 1868 conveyed to D. *Held*, in an action by the heir of D. to quiet title, that the attachment proceedings divested U. of title and were notice to third persons of the pendency of the action.

APPEAL from the district court of Douglas county. Tried below before SAVAGE, J.

*E. Wakeley* and *Leavitt Burnham*, for appellant, cited *Galway v. Malchow*, 7 Neb., 285. *State v. S., C. & P. R. R.*, 7 Neb., 357. *Swiggart v. Harber*, 4 Scam. (Ill.), 364. *Cunningham v. Cassidy*, 17 N. Y., 276. Drake on Attachment, secs. 228, 239. Laws of Neb., 1855, p. 164. Id., 1856, p. 86. Id., 1858, p. 178. Wade on Notice, Chap. V. Sec. 85, Neb. Civil Code. Story Equity, Sec. 405. *Doe v. Harter*, 2 Ind., 252. *Crowell v. Meconkey*, 5 Penn. State, 168. *Emley v. Drum*, 36 Penn. State, 123. *Fine v. St. Louis Public Schools*, 30 Mo., 166. *Lessee of Paine v. Mooreland*, 15 Ohio, 436. *Bronson v. Kinzie*, 1 How., 311. *McCracken v. Hayward*, 2 Id., 608. *Edwards v. Kearzey*, 96 U. S., 595. *Lessee of Seawell and Jones v. Williams*, 2 Overton, 274. *Rosier v. Hale*, 10 Iowa, 470. *Sowden & Co. v. Craig*,

26 Iowa, 156.   *Koehler v. Ball*, 2 Kan., 160.   Rorer on Judicial Sales, sec. 132.   *Parrat v. Neligh*, 7 Neb., 456. *Berkley v. Lamb*, 8 Neb., 392.

*Redick & Connell*, for appellee, cited *Hoadley v. Stephens*, 4 Neb., 431.   Rorer on Judicial Sales, secs. 798, 913, 927, 934, and cases cited.   *Galway v. Malchow*, 7 Neb. 285.   *Dorsey v. Hall*, Id., 465.   *Mansfield v. Gregory*, 8 Neb., 432.

MAXWELL, CH. J.

This is an action to quiet title.   A decree was rendered in the court below in favor of the plaintiff, from which the defendant appeals to this court.

It appears from the record that on the 12th day of May, 1857, one Henry W. Underhill entered by preemption the south-east quarter of section 6, in township 15, range 13 east, in Douglas county; that on the 12th day of September, of that year, he executed a mortgage upon the west half of said land to one F. M. Aiken, cashier of the Bank of Tekamah, to secure the payment of the sum of $672.06 in eighty-seven days from that date.   The mortgage was duly recorded.   On the 10th of December, 1857, Aiken assigned the above mortgage to one Reed, who, on the 20th of March, 1858, advanced an additional sum on the land, and took an assignment from Underhill of the certificate of entry of the land in question, and also a contract that Underhill and wife would convey said land to him upon receiving a patent therefor.   None of these transactions were recorded.   On the 19th of September, 1866, Reed purchased the land in question from Underhill and received a deed therefor, which was recorded on the 4th day of December of that year.   On the 16th day of January, 1868, Reed, for a valuable consideration, conveyed the land in question to one Isaac C.

Day, and afterwards, upon the death of Day, the plain-
tiff succeeded to his rights therein, and now claims to
be the owner of said land.   On the 12th day of April,
1858, C. M. McClung & Co. commenced an action by
attachment in the district court of Douglas county,
against H. W. Underhill, to recover the sum of $1073.21
and costs of suit.   The petition set forth that the de-
fendant was a non-resident of the territory.   A bond
for an attachment was duly filed and approved, and a
writ of attachment issued and was levied upon the land
in controversy.   On the 21st of September of that year
notice of the pendency of the action was ordered to be
published in the Omaha Times, and publication there-
after had, and on the 8th of October following, an af-
fidavit of publication having been made, was duly
filed, and on the 30th day of the month judgment by
default was rendered against Underhill for the sum of
$1254.31 and costs, but there was no order for the sale
of the attached property.   On the 4th day of April,
1859, an execution was issued on the judgment, and
levied upon the land in question, and the same was
sold to Thompson for the sum of $400.00.   On the 3rd
day of November, 1859, the sale was confirmed, and
the sheriff ordered to make a deed to the purchaser.
From some cause which does not appear in the record
the sheriff failed to make the deed as required, and
additional orders to that effect were made in 1863,
1870, and 1876, and in the year last named a sheriff's
deed was made to Thompson for the land in contro-
versy.   The land is uncultivated, and no improvements
whatever have been made thereon.   The plaintiff
commenced this action in 1877.

But two questions are presented by the record.
*First*, Had the court issuing the attachment and ren-
dering judgment jurisdiction? *Second*, If it had, was
the pendency of the proceedings notice to purchasers

of the land? The defendant in that action being a non-resident of the territory, the court obtained jurisdiction, if at all, by an attachment of his property.

Section 1, of Chapter XXXI, of the Code of Nebraska, approved February 13, 1857 (Laws of 1857, page 98), provided that "In. an action for the recovery of money, the plaintiff may cause any property of the defendant, which is not exempt from execution, to be attached at the commencement or during the progress of the proceedings by pursuing the course hereinafter prescribed."

"If it be subsequent to the commencement of the action a separate petition must be filed, and in all such cases the proceedings relative to the attachment are to be deemed independent of the ordinary proceedings, and only auxiliary thereto."

"The petition which asks an attachment must, in all cases, be sworn to. It must state, that as the affiant verily believes the defendant is a foreign corporation, or acting as such, or that he is a non-resident of the territory." * * * * * * * "If the plaintiff's demand is founded on contract the petition must state that something is due, and as nearly as practicable the amount, and when payable." "The amount thus sworn to is intended as a guide to the sheriff, who must, as near as the circumstances of the case will permit, levy upon property fifty per cent greater in value than that amount."

"Before any property can be attached as aforesaid, the plaintiff must file with the clerk a bond for the use of the defendant with sureties to be approved by the clerk, in a penalty at least double the value of the property sought to be attached, and in no case less than two hundred and fifty dollars if in the district court, nor less than fifty dollars if in a justice's court, conditioned that the plaintiff will pay all damages that

the defendant may sustain by reason of the wrongful suing out of the attachment."

All of these conditions were complied with, and the attachment was issued and levied upon the lands in controversy. It is very clear, therefore, that the court had jurisdiction.

As to notice to third parties, section 35, of chapter XXXI, of the code then in force, entitled, " Of real estate and the alienation thereof by deed," provided that " The register, when presented with an abstract of,

" 1.   Any judgment.

" 2.   A mechanic's lien.

" 3.   The service of an attachment.

" 4.   The levy of an execution, any of which establishes a lien upon real estate; or with,

" 5.   A notice of *lis pendens* in chancery, shall enter in a proper book, to be kept for that purpose, the substantial parts of such abstract, so as to show the names of the parties to such liens and notices, the amount of the judgment or indebtedness, by what court the judgment was rendered, or attachment or execution was issued, and in what court the suit in chancery is pending, together with a general description of the estate to be affected by the lien or notice." The notice required by the above section was filed in the manner required by law, and was sufficient.

The section quoted above was repealed by the code of 1858, which took effect April 1, 1859, which contains the following provisions: Section 77. " When summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency; and while pending, no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title."

Under the provisions of this section the pendency of the attachment was notice to third persons from the

time of the publication of notice, and this notice continued during the pendency of the action. And the jurisdiction of the court continued until the deed was executed. Here was an attachment properly levied, a judgment for the amount due, a sale of the attached property, a confirmation of the same and an order for a deed. All this appeared on the records of the district court, and so far as it affected the title of the lands in controversy, was notice to the world. The case differs materially from one where an action is commenced affecting the title to real estate which is not prosecuted with diligence. In such case the failure to prosecute may be considered as strong evidence of the want of merit in the action. But here the action was prosecuted with diligence, judgment obtained, a sale made and confirmed, and the delay in the execution of the deed, so far as appears from the record, was not caused by the default of the appellant.

The objection that no appraisement was made before the sale does not render the deed void, nor render the order confirming the sale subject to attack in this collateral manner. If a motion to set aside the sale is still pending in the district court, that is the proper tribunal to determine what disposition shall be made of it, but it cannot be considered in this court.

As Underhill had no title in the lands in question in 1866, therefore none passed by his deed, and the appellee thereby acquired no title to the same. It follows that the judgment of the district court must be reversed and the cause dismissed.

REVERSED AND DISMISSED.