JACOB M. SHUMAN, APPELLANT, V. RACHEL C. WILLETS ET AL., APPELLEES.

1. **Contract for Sale of Real Estate Construed.** A contract for the sale of real estate contained a provision that the consideration should "be paid in carpentering at $2.50 per day," the purchaser to have five days' notice when his services were required, "and to complete payment within twelve months if work is called for," and "to be allowed twenty per cent discount on any part of price of lots paid in cash." *Held*, 1, That the purchaser had the entire twelve months in which to make payment, and that it was optional with him to make payment either in labor or money. 2, That the vendor without the assent of the purchaser could impose no new conditions on the purchaser, and forfeit his rights under the contract before the expiration of the year.

2. **Specific Performance.** Where a contract in relation to real estate has been deliberately entered into by competent parties, and is not open to objections of fraud, undue means, etc., in obtaining it, a court of equity will carry out the intention of the parties by specifically enforcing its obligations.

3.———: ESTOPPEL. An action to enforce specific performance of a contract for certain lots was pending several years, and during this time certain parties erected a wooden building on one of the lots, which was not a fixture. This building the plaintiff afterwards rented for a short time but claimed to be the owner of the lot. *Held*, That he was not thereby estopped from enforcing his contract.

APPEAL from Harlan county. Tried below before GASLIN, J.

*Fred B. Beall* and *J. E. Bush*, for appellant.

*John Dawson*, for appellees.

MAXWELL, J.

This is an action for specific performance of a contract. The court below found the issues in favor of the defendants and dismissed the action. The action is founded on the following instruments:

"ALMA, NEB., July 2d, A.D. 1879.

"I have this day sold A. M. Shuman lots 5 and 6, in block 13, in the town of Alma, county of Harlan, and state of Nebraska, for the sum of one hundred dollars, to be paid in carpentering at $2.50 per day; he to do good average days' works and to have five days' notice of time when work is wanted, and to complete payment within twelve months if work is called for. He to be allowed twenty per cent discount on any part of price of lots paid in cash. He to pay taxes of '79 and to have deed in fee on final payment.

"R. C. WILLETS,
"*By Wells Willets, attorney in fact.*"

"ALMA, NEB., July 2d, A.D. 1879.

"I have this day bought of R. C. Willets lots No. 5 and 6, in block 13, in the town of Alma, county of Harlan, and state of Nebraska, for the sum of one hundred dollars, to

be paid in carpentering at $2.50 per day; I to do good average days' works; I to have five days' notice of time when work is wanted, and all to be worked out in twelve months if called for in that time. If any of the price is paid in cash a twenty per cent discount is to be allowed on price of lots to the amount paid in cash; deed in fee to be made on final payment; I to pay taxes of '79.

"J. M. SHUMAN."

It is alleged in the petition and not denied in the answer that A. M. Shuman, named in the first instrument, is J. M. Shuman, the plaintiff.

The defendants in their answer to the second amended petition admit that R. C. Willets at the date of the contract was the owner of the lots in question; admit the authority of the agent; allege that the plaintiff refused to perform the carpenter work after due notice to perform the same. That on the 10th of October, 1879, the defendant, R. C. Willets, notified the plaintiff to work after the expiration, of five days, and that plaintiff refused to comply with his request; that afterwards it was agreed between said parties that the plaintiff would commence work after the 25th of October, 1879, and labor continuously until he had paid said sum of $100, but that he failed to perform said labor; that afterwards on the 20th of November, 1879, the defendant, R. C. Willets, after making a demand for said sum of $80 which the plaintiff refused to pay, notified him that said contract was canceled, and the plaintiff acquiesced in said rescission; that after said rescission said R. C. Willets conveyed said lots to one Frank Shaffer, who afterwards conveyed to the other defendants. On the 2d day of July, 1880, the plaintiff tendered the agent of the defendant, Wells Willets, the sum of $80, which he refused, and in October following, the plaintiff commenced this action. In his testimony the plaintiff denies that he had an opportunity to do carpenter work. He testifies: "I have never received any notice except once. In

the fall of 1879, Willets came to my house and requested that I work on the house in which he is now living, and gave me five days' notice. I said, I am sorry that you did not let me know a day sooner as I have taken a contract at Republican City, but I will put that off and work for you. He said, no, go on with your contract, I can get Greeley to do all· that I want done. And that is the only notice I ever received." Mr. Willets does not deny this. In answer to a question whether he notified the plaintiff to work for him, he testifies: "I did; I left word with his wife about the 12th or 15th of September, 1879, and told her to tell him to come and see me. I saw nothing of him. Along in October I went to his house one Sunday evening, that was the only time he was visible, and requested him to work. He played off, saying he had other work, and said he could not leave without doing the work he was on. He claimed he could work for me in two weeks. I told him he might come then. He did not say positively. I waited two weeks, and I saw him one morning hitching up his horses to start away and I started to see him, and he whipped up his horses and run them clear down to the creek." The plaintiff denies this. Willets also testifies that the next time he saw the plaintiff he notified him that he must raise some money to pay the man that he had hired in his place, and notified him that if he did not he would declare the contract forfeited. It appears from other testimony that the amount of money demanded was about $12 for a week's work. About November, 1879, Willets sold the lots in question to Shaffer for $20 in money, and a number of lots in Republican City. Shaffer sent one Zerbe to see the plaintiff in regard to these lots, and as he testifies, the messenger "came back and said he could not do anything with him (the plaintiff)."

· Q. How long was that before you purchased the lots?

A. I think it was a little before.

31

By Mr. Dawson.

Q.   Is it not a fact that it was after the purchase of the lots by you, and you heard that he claimed an interest in them and you wanted to buy it?

A.   I think it was before.

Mr. Shaffer, therefore, having purchased with notice of the plaintiff's rights, purchased subject to them. The other defendants purchased while this suit has been pending, and since the service of summons in the case, and are chargeable with notice of the plaintiff's rights. Code, § 85. *Day v. Thompson*, 11 Neb., 123. It is evident from an examination of the testimony that the plaintiff, at the time the contract was made, was a poor man, that the provision to permit him to perform labor in part or entire payment of the lots was not so much because his labor possessed a peculiar value over that of other carpenters, but to enable him thus to pay for the lots. It will be observed the provision is, that he is " to complete payment within twelve months if the work is called for," and that he is "to be allowed 20 per cent discount on any part of lots paid in cash." *When* to be paid in cash? Clearly at any time during which he might be required to perform labor as a carpenter. This included at least the whole year, yet we find the defendant, Willets, within five months from the date of the contract with the plaintiff, selling and conveying the lots in question to Shaffer, upon the pretext that he had been compelled to employ another carpenter for a week's work at an expense of $12, a gain of $3 over the price agreed upon to be paid the plaintiff. But even if the plaintiff had refused to perform labor for the defendant at his request, still there is no provision in the contract that it shall thereupon become null and void, and a court has no authority to interpolate such terms therein. In construing a contract that construction which makes the contract legal and operative will be preferred to one which would have the opposite effect. Coke Litt., 42–183. *Church*

*Wardens of St. Savior*, 10 Rep. 67b.   *Archibald v. Thomas,*
3 Cow., 284.   *Many v. Beekman*, 9 Paige, 188.   *Shore v.
Wilson*, 9 Clark & F., 397.   And where the question is
whether words used in a contract should be taken in a
comprehensive or restricted sense; in a general or par-
ticular sense; in the popular and common, or in some
unusual and peculiar sense, in all these cases, the court
will endeavor to give to the contract a rational and just
construction; but the presumption of greater or less strength,
according to the language used or the circumstances of the
case, is in favor of the comprehensive over the restricted,
the general over the particular, the common over the
unusual sense.   2 Parsons on Contr. (5th Ed.), 500–1.
Applying these principles to the contract in this case, and
it is pretty clear that the plaintiff had an option to pay for
the lots in question in money if he saw fit to do so.

II.   The jurisdiction of courts of equity to decree specific
performance of contracts for the sale of real estate is not
limited, as in cases respecting chattels, to special circum-
stances, but is universally maintained.   *Gartrell v. Stafford,*
12 Neb., 551.   *Vindquest v. Perky*, 16 Id., 284.   If a con-
tract for the conveyance of land is in all respects fair, and
there are no insurmountable difficulties in the way of a
specific performance, it is as much a matter of course for a
court of equity to decree specific performance of the con-
tract as it is for a court of law to award damages for its
breach.   *Greenaway v. Adams*, 12 Ves., 395.   *St. Paul
Div., etc. v. Brown*, 9 Minn., 151.   *King v. Hamilton*, 4
Pet., 311.   As was said by Sir William Grant, in *Hall v.
Warren*, 9 Ves., 608: "Supposing the contract to have
been entered into by a competent party, and to be in the
nature and circumstances of it unobjectionable, it is as
much of course in this court to decree specific performance
as it is to give damages at law."   *Bennett v. Smith*, 10
Eng. L. & Eq., 274.   *Gartrell v. Stafford*, 12 Neb., 546.
*Adderly v. Dixon*, 1 Sim. & Stu., 607.   Story's Eq., § 746.

That is, that a contract deliberately entered into by competent parties, where no improper or undue means were used to obtain it, will be enforced. In other words, the court will carry out the intention of the parties and maintain the obligations of the contract by requiring the party in default to perform on his part. The discretion spoken of in some of the cases is not an arbitrary one, but judicial in its nature—such as the incompetency of one of the parties to make the contract, fraud, undue means, etc., that would render the enforcement of the contract inequitable. There is nothing of that kind chargeable against the plaintiff in this case to debar him from the relief sought.

III.   During the pendency of this action several wooden buildings have been erected on the lots in question. These appear to have been cheap structures, not affixed to the soil, and to which the plaintiff makes no claim In 1883 one of the attorneys for defendant was possessed of one of these buildings, and rented the same to the plaintiff, as he claims and as the evidence tends to show, at $4 per month, for six months.   The plaintiff seems to have claimed the lots at this time, and the attorney testifies that he told him "if the lot is yours the building is." The plaintiff then refused to pay rent, and was ousted in proceedings in forcible entry and detainer. The plaintiff did not claim the buildings, but did claim the lots; and these proceedings do not estop him from asserting his rights.

IV.   The defendants claim that the plaintiff did not intend to complete his contract if the town did not prove a success and lots advance in price, and Mr. Shaffer testifies that in the fall of 1879 he heard him make the following statement: " I have got a contract on some lots here; I don't know whether the town is going to make a place or not," and he said, "if lots go up I will make some money out of them, and if they go down I won't lose much." It will not be seriously contended that such language indicates an intention to abandon the contract.   Upon the whole case

we are of the opinion that the plaintiff is entitled to a decree. There has been great delay in prosecuting the action, but whether either or both of the parties are to blame for the delay does not appear and cannot be considered. The action was commenced in a reasonable time after the refusal of Willets to convey, and parties who have purchased since the service of the summons are not innocent purchasers, and are chargeable with notice of the plaintiff's rights. The buildings, so far as appears, are not attached to the soil and the plaintiff makes no claim to them. The judgment of the court below is reversed, the plaintiff is required within sixty days to pay to the clerk of this court, for the use of the defendants entitled to the same, the sum of $80, with interest at seven per cent from the 2d day of July, 1880, upon the payment of which the defendants are required to execute and deliver to the plaintiff a good and sufficient deed for the lots in question, and upon their failure to do so for ten days from that date, the decree in this case shall operate as such conveyance. And that the plaintiff recover his costs herein, to be taxed by the clerk.

DECREE ACCORDINGLY.

THE other judges concur.