HARVEY LINK V. WILLIAM J. CONNELL.

FILED MAY 20, 1896. No. 6524.

1. **Executions: SALE UNDER DORMANT JUDGMENT: COLLATERAL ATTACK.** A sale of real estate to satisfy a judgment which has become dormant under the provisions of section 482, Code of Civil Procedure, is voidable only, and cannot be assailed in a strictly collateral proceeding. (*Gillespie v. Switzer,* 43 Neb., 772.)

2. **Validity of Order Not Signed: JUDGES: PRACTICE.** Where the record discloses an order of the district court sufficient in form but omitting the name of the judge by whom it was made, the fact that the sole judge of the district named was at the date thereof disqualified to act in such proceeding by reason of having been attorney for one of the parties raises no presumption against the validity of such order in view of the statute authorizing judges to interchange and hold court for each other.

3. **Mortgages: SALE BY SHERIFF INSTEAD OF MASTER: CONFIRMATION.** Where a decree of foreclosure directs that the mortgaged property be sold by a master therein named, a sale by the sheriff to satisfy said decree under an order subsequently issued by the clerk is voidable at most, and such irregularity is cured by an order of confirmation regularly made.

4. **Deeds: ATTESTATION.** While it is customary to make use of the words "witness" or "witnessed" in attesting the execution of deeds and other instruments affecting the title to real estate, such practice is neither necessary nor universal. Any expression from

which it appears that the subscriber in fact witnessed the execution by the grantor sufficiently answers the requirement of section 1, chapter 73, Compiled Statutes.

5. **Mortgages: DECREE OF FORECLOSURE.** The pendency of a proceeding for foreclosure does not terminate with the entry of an order for the sale of the property bound by the lien, but continues as a rule, for the purpose of the enforcement of the decree, until confirmation of the sale and disposition of the proceeds thereof.

6. ———: **PURCHASER OF LAND: NOTICE OF SALE AND CONFIRMATION.** One who purchases property bound by a decree of foreclosure is, in the absence of equitable considerations resulting from the circumstances of the particular case, charged with such notice as the record imparts, and is not entitled to personal notice of sale and confirmation subsequently made in the enforcement of such decree.

7. **Adverse Possession.** Evidence examined, and *held* to sustain finding against the plaintiff in error upon the issue of adverse possession of property in dispute.

8. **Trial.** Verdict set out in opinion *held* sufficient to sustain the judgment complained of.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*C. A. Baldwin* and *W. R. Morris*, for plaintiff in error.

*Connell & Ives* and *O. H. Ballou*, contra.

POST, C. J.

This was an action of ejectment by Connell, the defendant in error, against the plaintiff in error, Link, in the district court for Douglas county, the subject of the controversy being the northwest quarter of section 2, township 14, range 11, in said county. A trial was had in the court below, resulting in a verdict and judgment for the plaintiff therein for the possession of the property in dispute and for $1,800 damage, the value of the rents and profits thereof, and which has by appropriate proceeding been removed into this court for review. Both parties claim through Emanuel H. Link, who acquired title to the land described by patent from the United

States.  Connell, according to the evidence in the record, claims through certain *mesne* conveyances from Eliza K. Tarkington, to whom said property was conveyed by Henry Grebe, sheriff and master commissioner, March 17, 1873, while the plaintiff in error, Link, claims by virtue of a quitclaim deed from his brother, Emanuel H. Link, the patentee named, bearing date of June 13, 1870.  As most of the questions discussed relate to the proceeding antecedent to the execution of the deed to Mrs. Tarkington, it is deemed proper to notice, in their chronological order, the steps which led to that event.

On the 10th day of August, 1857, Emanuel H. Link, being the owner of the property in controversy, by mortgage deed conveyed the same to F. M. Aiken, as security for the note of the mortgagor, of even date therewith, for $280.  Subsequently the Bloomington Bank, as holder of said note and mortgage, instituted proceedings for foreclosure in the territorial district court for Douglas county, and which were prosecuted to final decree on the 7th day of July, 1860.  Provision was by said decree made for the sale of the mortgaged property by James G. Chapman, master commissioner, in case the respondent therein, Link, failed to pay the amount adjudged due within twenty days from and after the date last mentioned.  On the 23d day of December, 1872, George Armstrong, as clerk of the district court, issued an order of sale for the satisfaction of said decree directed to the sheriff of Douglas county.  On February 11, 1873, said order of sale was returned by Henry Grebe, sheriff, showing a sale in due form of the property mentioned to Eliza K. Tarkington.  On March 10, 1873, an order was, on motion of the complainant, made to show cause by the following day why the said sale should not be confirmed.  On the day last mentioned, to-wit, March 11, there was a formal order of confirmation, with direction to the sheriff to execute a deed conveying said property to the purchaser above named, and on March 17, following, said property was, pursuant to the last mentioned

order, conveyed to Mrs. Tarkington, the purchaser, by deed, in which the said Henry Grebe is described as sheriff and master commissioner.

It is in the first place contended that the decree in question had become dormant prior to December 23, 1872, and not having been revived in the manner prescribed by law, the order of sale issued on that day for its enforcement was without authority, and the subsequent proceedings pursuant thereto, including the order of confirmation, were without jurisdiction and void. A question discussed at length by counsel is whether section 482 of the Code, providing that any judgment shall become dormant in case execution shall not be issued thereon within five years, is applicable to decrees of foreclosure; but that question, although presented by another assignment, will not be examined in this connection, for two reasons: First, because we are unable to determine from the record that there was in fact any such failure as to bring the case within the operation of the statute; and second, assuming the section above cited to apply as well to decrees of foreclosure as to judgments at law, an order of sale for the enforcement of a dormant decree would at most be voidable only, and cannot be assailed in a strictly collateral proceeding. Whatever doubts may be entertained by other courts respecting the proposition last stated, it is no longer the subject of controversy in this jurisdiction. The precise question was presented in the recent case of *Gillespie v. Switzer*, 43 Neb., 772, in which, after conceding for the purpose of the argument that decrees of foreclosure are within the provisions of the statute, it was held, quoting from the syllabus, that "a sale on an execution issued upon a dormant judgment is merely voidable, and neither such sale nor the title acquired thereunder can be assailed in a purely collateral proceeding."

The order of confirmation is assailed as void upon the further ground that Hon. Geo. B. Lake, the judge by whom it was entered, was solicitor for the Bloomington

41

Bank in the suit against Emanuel H. Link, and who, as such, secured the decree of foreclosure upon which said order depends; but a careful examination of the record discloses no foundation whatever for that contention. It is true that George B. Lake appeared as solicitor for complainant in the foreclosure proceeding. There is, however, nothing in the record to indicate the name of the judge who allowed the order of confirmation. Assuming, as we are asked to do, that the solicitor named was at the date in question, to-wit, March, 1873, sole judge of the district court for Douglas county, still we cannot indulge the presumption that he entered the order complained of. By statute then in force judges were permitted to interchange and hold court for each other. (General Statutes, ch. 14, secs. 19, 55.) And a judge was then, as now, disqualified from acting except by mutual consent of parties, in any case or proceeding in which he had been attorney for either party. (General Statutes, ch. 14, sec. 33.) We are bound to presume, in view of the provision cited, that the order of confirmation was entered by one of the other judges of the state, or, if made by Judge Lake, that it was done with the consent of the parties thereto.

It is next argued that by terms of the decree James G. Chapman, as master commissioner, was alone empowered to advertise and sell the mortgaged property; that the order of sale issued to the sheriff was a usurpation of authority by the clerk, and that the sale and deed made in pursuance thereof are void and insufficient to pass the title of the property therein described. The order of sale was, it may be assumed, irregularly issued, and that application should have been made to the court to so modify the decree as to authorize its enforcement by the sheriff instead of by the master named. The error is, however, not one which affects the jurisdiction of the court and was cured by the order of confirmation. The jurisdiction of the court over the person of Emanuel H. Link cannot be doubted, since the record affirmatively shows an appearance by him. Any mere error in the prosecution of the

cause should, therefore, have been corrected by means of a direct proceeding for that purpose, and cannot be made the subject of a collateral attack upon the decree or subsequent orders essential to its enforcement. (*Crowell v. Johnson,* 2 Neb., 146; *McKeighan v. Hopkins,* 14 Neb., 361; *Neligh v. Keene,* 16 Neb., 407; *Taylor v. Coots,* 32 Neb., 30.) It is said in *Neligh v. Keene, supra:* "Where the court has jurisdiction the confirmation of the sale cures all defects and irregularities in the proceedings and such order cannot be attacked collaterally." It is unnecessary to review the cases cited in this connection by the plaintiff in error. It is sufficient that they in nowise conflict with the foregoing.

On the production of the record of the deed to Mrs. Tarkington counsel for plaintiff in error objected to its admission as proof of title on the ground that it was not witnessed as required by law, which objection was overruled and the deed received in evidence, and which ruling is now assigned as error. To the left of and below the signature of Henry Grebe the grantor, and immediately preceding the certificate of acknowledgment, as shown by the copy accompanying the bill of exceptions, appear the following words:

"In presence of
the above erasure and
interlineation of said
court made before
signing.
     "GEORGE ARMSTRONG."

It is not pretended that the signature of George Armstrong, the alleged witness, is a forgery, or that it was written at a time other than that of the execution of the deed. It is possible, as argued by counsel, that the words above quoted have reference to erasures and interlineation appearing upon the face of the conveyance rather than the execution thereof. While that argument would doubtless have been effective as a reason for demanding the production of the original deed instead of the record,

it is without force as applied to the objection actually made; nor, in the view we take of the record, is it material to inquire whether the words in question refer to erasures or interlineations appearing upon the face of the deed, or whether they are parts merely of the printed form made use of by the conveyancer, since the remaining words, to-wit: "In the presence of  *  *  *  George Armstrong," is a sufficient attestation to answer the requirement of the statute. By section 1, chapter 73, Compiled Statutes, it is provided that deeds of real estate, "if executed in the state, must be signed by the grantor or grantors, being of lawful age, in the presence of at least one competent witness, who shall subscribe his or her name as a witness thereto." While it is customary to make use of the expression "witness" or "witnessed" in attesting the execution of deeds and other instruments affecting the title to real estate, such practice is neither necessary nor universal. On the contrary, any recital from which it appears that the subscriber witnessed the execution of the deed by the grantor named is sufficient; for, as has been remarked, the reason of the rule is "the party to whose execution he is a witness is considered as invoking him, as the person to whom he refers, to prove what passed at the time of his attestation." (1 Greenleaf, Evidence, sec. 569.) The objection is without merit and was rightly overruled.

A proposition strongly relied upon by the plaintiff in error is that, as purchaser of the property in controversy, he was entitled to personal notice of the sale and motion to confirm, and that the order of confirmation, in the absence of such notice, is void for want of jurisdiction. The basis of that claim is the rule of the common law by which a terre tenant—*i. e.*, one in the actual possession of land by title derived from a judgment debtor during the existence of the lien—is entitled to notice of proceedings subsequently brought to revive the lien of the judgment by means of *scire facias*. (1 Black, Judgments, sec. 492.) But that doctrine can, we think, have no application

to the case at bar.    Section 85 of the Civil Code pro-
vides: "When the summons has been served, or publica-
tion made, the action is pending, so as to charge third
persons with notice of pendency, and while pending no
interest can be acquired by third persons in the subject-
matter thereof, as against the plaintiff's title."    And secs.
846 and 847, relating to the foreclosure of mortgages,
read as follows:

"Sec. 846.    Whenever a petition shall be filed for the
foreclosure or satisfaction of a mortgage, the court shall
have power to decree a sale of the mortgaged premises,
or such part thereof as may be sufficient to discharge the
amount due on the mortgage, and the cost of suit.

"Sec. 847.    When a petition shall be filed for the satis-
faction of a mortgage, the court shall not only have the
power to decree and compel the delivery of the possession
of the premises to the purchaser thereof, but on the com-
ing in of the report of sale, the court shall have power to
decree and direct the payment by the mortgagor of any
balance of the mortgage debt that may remain unsatis-
fied after a sale of the mortgaged premises, in the cases
in which such balance is recoverable at law; and for
that purpose may issue the necessary execution, as in
other cases, against other property of the mortgagor."

Although the precise question has not been determined
by this court, the principle which must govern in its solu-
tion was distinctly recognized in *Day v. Thompson*, 11
Neb., 123.    In the case cited, which was an action to
quiet title, the land in controversy was in the year 1858
attached as the property of Underwood, the common
source of title, and in the same year judgment was in
said action entered against him by defendant without an
order for the sale of the attached property.    In 1859 said
property was sold on execution, which was followed in
the same year by an order of confirmation, but the sher-
iff's deed therefor was not executed until the year 1876.
The plaintiff, who claimed by deed from Underwood, exe-
cuted in 1866, contended that whatever rights the defend-

ant might have acquired as purchaser of the property, were lost through his laches in failing to demand a deed; but it was said, referring to section 77, Code of 1858 (which is identical with section 85, Code 1866, above quoted): "Under the provisions of this section the pendency of the attachment was notice to third persons from the time of the publication of the notice, and this notice continued during the pendency of the action. And the jurisdiction of the court continued until the deed was executed." In Ohio, under a statute identical with section 482 of our Code, it has frequently been held that the pendency of an action of foreclosure continues for the purpose of the enforcement of the decree until confirmation of the sale and disposition of the proceeds thereof. Hence the decree in such case does not become dormant although more than five years may elapse without the issuing of an order of sale. (*Beaumont v. Herrick,* 24 O. St., 445; *Moore v. Ogden,* 35 O. St., 430; *Rankin v. Hannan,* 37 O. St., 113. See, also, *Jackson v. Warren,* 32 Ill., 331.) In Bennett, Lis Pendens, p. 173, it is said: "When jurisdiction has attached to the *res,* the general rule should be that the suit will pend so long as it is not dismissed by the court *sua sponte,* or for want of prosecution, or upon the motion of the parties, or be brought to a close by reason of some statutory provision or rule of court having force of law.   *   *   *   When the elements of a valid *lis pendens* exist and the court, in the enforcement of its acknowledged jurisdictional power, shall proceed to judgment or decree and its execution, if it were permissible for the same, or another court in a collateral proceeding to say that there had not been a valid *lis pendens* binding upon the *res,* it would amount to the nullification of a judgment or decree where the court had acknowledged jurisdiction. Such a result would be most disastrous and ought never to occur." It will be conceded that the failure to prosecute may be for such time or accompanied by circumstances of such character as to raise a presumption of abandonment particularly in favor of one who has

purchased or otherwise in good faith acquired an interest in the *res* without notice other than such as is imparted by the record; but that rule, or, more accurately speaking, that exception to the rule, can have no application to the issues of this cause, there being no claim on the part of the plaintiff in error that he purchased without actual notice of the unsatisfied decree, or of other equities existing in his favor which should prevail as against the legal title. We conclude that the plaintiff purchased *pendente lite*, that the district court had jurisdiction of the *res* at the time of the sale and confirmation, and that by virtue of the deed executed pursuant to said order the grantee therein, Mrs. Tarkington, acquired such title to the premises as was held by Emanuel H. Link at date of the mortgage by the latter to Aiken.

The next proposition to which attention will be given is that the plaintiff in error had, previous to the commencement of this action in the court below, enjoyed the uninterrupted adverse possession of the premises in dispute, under his deed from Emanuel H. Link for more than ten years. At the date of the sheriff's deed in 1873, one Hollenbeck was, or claimed to be, in possession of said premises by virtue of certain tax deeds, and Mrs. Tarkington, the purchaser named, being unable to make a satisfactory adjustment of the alleged tax liens, proceeded to assert her right of possession by means of an action of ejectment in which Hollenbeck was named as the sole defendant. That action was prosecuted to judgment in favor of the plaintiff therein in the month of April, 1880, which judgment was removed into this court for review, although subsequently dismissed on motion of the defendant in error. (See *Hollenbeck v. Tarkington*, 14 Neb., 430.) A writ of restitution having been issued for the purpose of enforcing the judgment of the district court, a petition of intervention was filed by the plaintiff in error herein, in which he alleged possession of the premises since the date of his said deed, to-wit, June 13, 1870, adverse to both parties to that action. The contro-

versy thus occasioned resulted in an order for the execu-
tion of the writ of restitution against Hollenbeck, but de-
nying relief as against the plaintiff in error on the ground
that he was not made a party to that action, and which
order was subsequently affirmed by this court. (See *Tark-
ington v. Link*, 27 Neb., 826.) The question of the plaint-
iff in error's title by adverse possession was, as will thus
be seen, an open one, and was the principal subject of
contention at the trial below. The evidence adduced by
the defendant in error tends to prove that Hollenbeck
took possession of a part of said tract of land in the year
1865 and cut hay·thereon until 1871, in which year he
broke "hedge strips" on three sides thereof; that he com-
menced breaking thereon in 1872, and in 1875 had 100
acres under cultivation, and that the land so broken was
cultivated by him and his tenants continuously except-
ing the year 1882, during which it remained uncultivated
until the decision adverse to him in the year 1883. It is
further shown that he was permitted to harvest the crop
for the year last named which had been sown previous
to the judgment dispossessing him. There was, accord-
ing to his testimony, no building of any kind upon said
land prior to the decision by this court in *Hollenbeck v.
Tarkington, supra,* but that the plaintiff in error, upon
learning of.the final disposition of that cause, immedi-
ately placed a house thereon, and which was the first as-
sertion by the latter of an adverse claim to the premises.
A material fact, as to which there is no controversy, is
that the plaintiff in error, during the twenty years which
intervened between the execution of the quitclaim deed
in 1870 and the commencement of this action in 1890,
paid no part of the taxes annually assessed against the
land now claimed by him. It is true he claims to have
made repeated efforts to pay the taxes, but upon inquiry
learned they had been paid by others. We are, however,
satisfied from a careful reading of the record that all
efforts by him in that direction were subsequent to the
abandonment of the premises by Hollenbeck in 1883, and

are no evidence of the assertion on his part of title anterior to that date. There was much testimony contradictory of the witnesses of the defendant in error respecting the issue of adverse possession, but the credibility of the witnesses, as well as the probative force of the evidence, were questions for the jury, and with the verdict we do not, upon the record before us, feel at liberty to interfere.

Among the assignments of error are the following:

"10. The court erred in giving instructions. numbered 2, 3, 4, 5, 9, 9½, 11, and A on its own motion.

"11. The court erred in giving instructions marked 10 and 11 at the request of the plaintiff below.

"12. The court erred in refusing instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and A requested by the defendant below."

This method of assigning error, it has been often held, presents no question for examination, unless the error alleged applies to each of the paragraphs enumerated in a particular group. It is not at this time pretended that those given, in either of the foregoing assignments, are all erroneous, or that those refused should all have been given. The subject of the instructions might accordingly be dismissed without further comment, but having examined all of those to which reference is made in the brief of counsel before our attention was directed to the assignments of error, it may with propriety be observed that they present no ground of complaint on the part of the plaintiff in error. The tenor of those given is fairly indicated by the views expressed in this opinion, and are, for the most part, the antitheses of those refused.

Finally, it is alleged that the verdict is insufficient in form and substance, and a reversal of the judgment is asked upon that ground. Said verdict, omitting date and caption, is as follows:

"We, the jury, duly impaneled to try the issues joined in the above entitled cause, do find on said issues in favor of the said plaintiff, and that at the time of the commence-

ment of this action the said plaintiff was, and still is, the owner in fee-simple and entitled to the possession of the land described in said petition, to-wit, the northwest quarter of section 2, T. 14, R. 11 east, in Douglas county, Nebraska. * * * The plaintiff is entitled to recover for the rents and profits of the use and occupation of said land up to the present time. We assess his damages at $1,800. WM. F. MANNING,
"*Foreman.*"

The argument against the sufficiency of the above finding is obviously without merit and will not be further noticed. There is no error in the record and the judgment is

AFFIRMED.