[No. 6062. Decided August 15, 1906.]

JOSEPH A. HYDE et al., Appellants, v. OSCAR G. HEATON et al., Respondents.[1]

MORTGAGES — FORECLOSURE — SALE — CONFIRMATION—WHEN TO BE MADE. Confirmation of a sale of mortgaged premises under a decree of foreclosure and execution levy may be made more than six years after the date of sale, the statute relating to the duration and revival of judgment liens having no application; since the sale satisfied the judgment and passed the equitable title to the land, regardless of the confirmation.

LIS PENDENS—EFFECT—MORTGAGES—FORECLOSURES. In an action to foreclose a mortgage in which notice of lis pendens is filed, it is not necessary for the purchaser to record the certificate of sale in order to give notice to subsequent purchasers, even though six years elapse before confirmation of the sale.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 24, 1905, in favor of the

[1] Reported in 86 Pac. 664.

28—43 WASH

defendants, on the pleadings, after sustaining a demurrer
to the affirmative matter in plaintiff's reply, in an action of
ejectment. Affirmed.

*H. D. Moore,* for appellants.

*S. H. Steele,* for respondents.

DUNBAR, J.—Appellants brought this action in ejectment
to recover possession of certain lands described in the com-
plaint, alleging therein that on May 23, 1904, they became
seized in fee and possessed thereof and that afterwards, on
August 24, 1904, while they were so seized and possessed,
respondents entered without right or title and ousted appel-
lants, and that they now unlawfully withhold such posses-
sion. The respondents denied these allegations, and for
affirmative defense alleged, that on September 30, 1891, one
Charlotte Cannon, then being the owner of the land described
in plaintiffs' complaint, for value, duly executed and deliv-
ered a mortgage thereon to the Guarantee Loan & Trust Com-
pany, for the sum of $400, which mortgage was duly filed and
recorded, etc.; that afterwards the said Guarantee Loan &
Trust Company duly assigned and transferred said mortgage
to one Julia I. Gelston; that on April 29, 1895, the said Char-
lotte Cannon sold and conveyed the premises to one Emily
Taylor, subject to said mortgage; which deed was filed for
record, etc.; that on May 28, 1897, the said Julia I. Gelston
commenced an action against the said Charlotte Cannon and
Emily Taylor in the superior court of King county, to fore-
close said mortgage and sell said premises; that at the time of
filing the complaint in the above entitled action, a *lis pendens*
was duly filed and recorded; that the said Emily Taylor
was duly served with summons and a copy of the complaint;
that the said Charlotte Cannon was duly and legally served
with summons by publication; that on September 16, 1897,
the superior court of King county, Washington, then having
jurisdiction of the subject-matter and of the parties and of

the default of said Charlotte Cannon and Emily Taylor, duly
and legally entered a decree in said action in favor of Julia I.
Gelston for the amount demanded, and foreclosed said mort-
gage and ordered the premises sold in the manner provided
by law for the satisfaction of said debt, said judgment pro-
viding that the said Charlotte Cannon, Emily Taylor and all
persons holding by, through, or under them, are forever
barred, cut off and estopped from having or claiming any
interest in said land; that on September 23, 1897, an execu-
tion was duly and legally issued and delivered to the sheriff
of King county, Washington, commanding him to levy on
the above described land and sell the same in the manner
provided by law in satisfaction of the said debt; that on Sep-
tember 24, 1897, said sheriff duly and legally levied such
execution on the above described land; that on October 30,
1897, the sheriff of King county, Washington, in pursuance
of said decree, execution and levy, after giving notice, etc.,
sold said land in the manner provided by law, to Julia I.
Gelston, subject only to redemption in the manner provided
by law, for the sum of $516.92, which sum was then and
there paid by the said Julia I. Gelston for said land, and
the sheriff of said county then and there issued and delivered
to the said Julia I. Gelston a certificate of purchase of said
land, and duly and legally reported said sale to the superior
court of King county, Washington; that on October 30, 1897,
said Julia I. Gelston filed a motion in said case for the con-
firmation of said sale; that on June 9, 1904, the time for
redemption having expired and said property not having been
redeemed from said sale, the superior court of King county,
Washington, entered an order confirming said sale to said
Julia I. Gelston; that afterwards the sheriff delivered a deed
to said Julia I. Gelston for the said land. The answer sets
up the conveying of the title from Julia I. Gelston through
different parties to the respondents. Other matters and de-
fenses, in relation to the redemption of the land from tax
liens by the respondents, are set forth in the answer, but with

the view we take of the law on the main case it is not material
to enter into a discussion of these subsequent questions.

The plaintiffs' reply denied the right of the parties making
the several deeds to deed the property as against the rights of
the plaintiffs; set up the fact that the judgment was rendered
on the 16th day of September, 1897, and that the sale was
not confirmed until in June, 1904; that more than six years
elapsed between the date of said sale and the date of said
confirmation, and that no proceedings were ever had to re-
vive said judgment, and that no notice of said confirmation
was ever served upon the judgment debtors or the plaintiffs
herein; alleged that the plaintiffs were, at the time of the
filing of said motion for confirmation, the holders of the legal
title of record; that said judgment was never satisfied upon
the judgment docket; that by reason of the lapse of time the
judgment had become dead, null, and of no effect; that by
reason thereof the court had lost jurisdiction to entertain a
motion for confirmation and to make an order of confirmation,
and that the judgment, order of confirmation of said sale,
and said sheriff's deed issued thereunder were void, but
that they constituted a cloud upon plaintiff's title to said
lands; set forth that they purchased the lands for a valuable
and fair consideration without any notice of the claim, title,
equity, interest or lien of said Julia I. Gelston, or any other
person; alleged that by reason of the failure of the said
Julia I. Gelston to take possession of said lands or to obtain
a confirmation of said sale or to record the certificate of
purchase, the said Julia I. Gelston and her grantees are now
estopped from asserting or claiming title adversely or against
said plaintiffs. To this reply the defendants demurred, which
demurrer was sustained. Afterwards defendants asked for
judgment on the pleadings, which was granted, and the ap-
peal is taken from said judgment.

The appellants claim title through Emily Taylor, who
deeded the land to H. M. Perry on May 21, 1904, and
Perry to the appellants on May 23, 1904; so that it will be

seen that the principal contention in this case is, that the
court was without jurisdiction to confirm the sale after the
lapse of six years from the entering of the judgment of fore-
closure. It is asserted by the appellants that this court
has held that a judgment becomes inoperative for any pur-
pose after the time prescribed by statute for the duration
of this lien, citing *Brier v. Traders' Nat. Bank,* 24 Wash.
695, 64 Pac. 831; *Packwood v. Briggs,* 25 Wash. 530, 65
Pac. 846, and *Hardin v. Day,* 29 Wash. 664, 70 Pac. 118.
But *Brier v. Traders' National Bank, supra,* and the cases
which followed it, do not touch upon or discuss the proposi-
tion involved in this case. In *Brier v. Traders' National
Bank* it was held that no judgment could be revived unless
proceedings therefor should be commenced within six years
after the date of its rendition, and that the act of revival does
not make the lien continuous where application therefor is
not made until after the expiration of the five years; and
where the lien has ceased prior to the order of revival, it
cannot be revived so as to affect the rights of a purchaser who
had acquired title subsequent to the original judgment; that
such after-acquired title has priority over the judgment dur-
ing the interval between the cessation and revival of the judg-
ment lien. In *Packwood v. Briggs,* it was held that the exe-
cution was void at the time of the attempted sale, and that
there being no lien in existence, there could have been no
authority for the sale under any execution that might have
issued. *Hardin v. Day* and many subsequent cases were
based upon the same idea, viz., that the sale of land on
execution, made more than five years after the rendition of
the judgment, was void where the judgment had not been
revived.

But this is not a judgment lien; nor do we readily see how
there could have been any legal attempt to revive this judg-
ment, for the judgment had been merged into an execution,
and the execution had been followed by sale, and the pay-
ment of the purchase money into court. So that the pertinent

question here is, not whether a lien obtained by a judgment
has expired, but what interest in the land was conveyed to
the creditor by the sale of the land by proceedings subsequent
to foreclosure. Confirmation is simply the judicial sanction
by the court of the sale, completing the legal transaction. It
does not have the virtue of the sale itself, but is judicial evi-
dence of the sale. It relates back to the time of sale, and
supplies all defects excepting those founded in want of juris-
diction or in fraud. If the sale was made without jurisdic-
tion, it could not be cured by confirmation. So that it is the
legal sale and payment of the purchase price which gives the
equitable interest to the purchaser, and not the confirmation,
which is more of a ministerial act. It therefore follows that
the purchaser has more interest than that of a mere lien on
the land sold, and that the statute prescribing the duration
of liens and judgments does not affect him. Respondents cite
many cases sustaining this position, notably *Link v. Connell,* .
48 Neb. 574, 67 N. W. 475, which is very nearly parallel
with the case at bar, and decides every pertinent question
raised in the case at bar. There, as here, it was claimed that
the action of the court in confirming the sale was without
jurisdiction by reason of the lapse of time, and the court
said that that question had been determined adversely to the
contention in *Day v. Thompson,* 11 Neb. 123, where it was
contended that whatever rights the purchaser had acquired
were lost through his laches in failing to demand a deed. But
the court, in that case, at page 127, quoting the statute, which
is similar to ours, said:

"Under the provisions of this section the pendency of the
attachment was notice to third persons from the time of the
publication of the notice, and this notice continued during
the pendency of the action. And the jurisdiction of the court
continued until the deed was executed;"

citing a case from Ohio, viz., *Beaumont v. Herrick,* 24 Ohio
St. 445, where, under statutes similar to ours, it was held
that the pendency of an action of foreclosure continues for

the purpose of the enforcement of the decree until confirmation of the sale and disposition of the proceeds thereof, and that the decree in such case did not become dormant although more than five years had elapsed without issue of an order of sale, five years being the life of the lien in that state; also citing Bennett on Lis Pendens, page 173, where it was said:

"When jurisdiction has attached to the *res,* the general rule should be that the suit will pend, so long as it is not dismissed by the court, *sua sponte,* or for want of prosecution, or upon the motion of the parties, or be brought to a close by reason of some statutory provision or rule of court having force of law. . . . When the elements of a valid *lis pendens* exist, and the court, in the enforcement of its acknowledged jurisdictional power, shall proceed to judgment or decree and its execution, if it were permissible for the same or another court in a collateral proceeding to say that there had not been a valid *lis pendens* binding upon the *res* it would amount to the nullification of a judgment or decree where the court had acknowledged jurisdiction. Such a result would be most disastrous and ought never to occur."

It was also determined in that case that the question of the jurisdiction of the court in an action of this kind, viz., the foreclosure of a mortgage, could not be raised upon a collateral attack.

But, outside of that question, it seems to us that the issues in this case have been determined in favor of the respondents, by this court, so clearly that outside authorities are of little moment. In discussing the value and effect of confirmation, we said, in *Morrow v. Moran,* 5 Wash. 692, 32 Pac. 770, that it was not the confirmation that gave the equitable title to the land, but it was the purchase at the execution sale and the payment of the purchase price according to the terms of the sale; that if the proceedings had been regular up to the time of and including the sale, the equitable title would pass to the purchaser, and that the confirmation was really only the announcement of the legal determination of these facts. In *Diamond v. Turner,* 11 Wash. 189, 39 Pac. 379, it was held that a certificate of sale passed the substantial title of de-

fendant at execution sale, and the fact that a deed in pursuance thereof was executed to the purchaser after his death, would not defeat the title of those claiming under him, the court saying:

"The certificate or purchase and confirmation of sale were alone essential to pass the substantial title of the defendant in the execution to the purchaser at the sale. The execution of the deed after the time for redemption had expired was a purely ministerial act on the part of the officer, and could have been compelled by the purchaser, or those claiming under him, at any time in a proper proceeding for that purpose. Until the sale had been set aside, a certificate of purchase would be as fully protected as though the legal title had been conveyed by deed made in pursuance of the statute."

Under these authorities the respondents had an equitable interest in the land and, although the confirmation of the sale was necessary to complete the legal title, the equitable title existed and could not be affected by the lapse of time, unless, by the negligence of the holder of the equitable interest in not obtaining the confirmation for an unreasonable length of time outside of the statutory provisions, innocent parties were misled and made to suffer by reason of such negligence. In such cases a large discretion is vested in courts to determine, under all the circumstances of the case, when such time has expired. But there is nothing in this case that would bar the respondents from asserting their right on account of negligence.

It is contended, however, by the appellants that, in case title did pass to the respondents through the sale, the certificate of sale should have been recorded in order to give notice to innocent purchasers. Notice was given by the filing of the *lis pendens,* and under universal authority, such notice holds good until the determination of the case. No notice of subsequent proceedings after default is required by the statute. It was decided by this court in *Norris v. Campbell,* 27 Wash. 654, 68 Pac. 339, that Bal. Code, § 4886 (P. C. § 342), which provides that a defendant after appearance in an

action is entitled to notice of all subsequent proceedings, is not applicable where defendant has been adjudged to be in default, and hence notice of proceedings subsequent to default was unnecessary; citing *Mendenhall v. Kratz,* 14 Wash. 453, 44 Pac. 872. In this case default was entered against the defendants.

No error appearing, the judgment is affirmed.

MOUNT, C. J., CROW, FULLERTON, and ROOT, JJ., concur.