WILLIAM D. ABEL, EXECUTOR, APPELLANT, V. ALMIRA J.
GILL ET AL., APPELLEES.*

FILED FEBRUARY 13, 1914.    No. 17,550.

1. **Specific Performance**: SUFFICIENCY OF EVIDENCE. Findings of fact
   made by the district court examined and approved.
2. **Vendor and Purchaser**: CONTRACT: CONSTRUCTION. Contract set
   forth in the opinion *held* to be an executory contract of sale and
   not a mere option.

APPEAL from the district court for Merrick county:
GEORGE H. THOMAS, JUDGE. *Reversed with directions.*

*W. T. Thompson* and *Martin & Bockes,* for appellant.

*E. E. Ross* and *Reeder & Lightner, contra.*

LETTON, J.

This action is brought by the assignee of the contract
hereinafter set forth to specifically enforce its terms. She
afterwards died, and the action was revived in the name
of her executor. The defendants plead that the land de-
scribed in the contract is their family homestead; that
they are aged and in feeble health; that Robert Gill is
unable to read or write, and Almira J. Gill by reason of
defective eyesight can only read with great difficulty, and
that neither are familiar with the transaction of business;
that on the evening of July 28, 1909, George Beardsley
and James Wolfe came to their home; that defendants
offered to sell their land for $60 an acre, and Beardsley
and Wolfe agreed to purchase at that price, informing de-
fendants that Wolfe was to be the purchaser; and that a
written agreement was prepared which the defendants

———
*Modified.  See opinion, p. 285, *post.*

were unable to read, and, believing the statements of Wolfe and Beardsley, they attached their signatures to the paper. They deny that they executed and acknowledged the instrument set forth in the petition, and aver that as soon as they learned that the instrument provided for a consideration of $9,000 instead of $9,600 they repudiated it and offered to return the $100 paid to them; that the plaintiff was aware of these facts before she took the assignment.

The district court found, in substance, that the property was the family homestead, that the defendants duly signed, executed, acknowledged, and delivered the written contract sued upon to Wolfe; that the consideration actually agreed upon was that stated in the contract; that the defendants were paid $100, which they retained, and in January, 1910, tendered back to Wolfe, and that at such time the defendants knew that the contract had been assigned to Susan M. Abel; that Mrs. Abel paid $1,500 for the assignment; that she, afterwards, was notified that defendants repudiated the contract, would not perform its terms or conditions, and would not receive any further money as payment upon the same, and that she was thereby relieved from the obligation to tender strict performance; that Mrs. Abel was at all times prior to her death ready, able and willing to fully perform all the terms and conditions of the contract, and has tendered full performance. The court also made the following findings of law: "Eighth. That the contract sued upon is, in legal effect and construction, an option contract selling only the right to purchase, and is not a contract of purchase and sale of land. Ninth. That the defendants in making and entering into such contract did not know or contemplate that they were making and entering into an option contract selling only the right to purchase this land, but in so doing did contemplate and intend thereby to make and enter into a contract of sale and purchase, and the contract sued upon herein is therefore not the contract of these defendants and ought not therefore to be enforced in equity." A decree was then

entered canceling the contract upon the defendants pay-
ing $100 with interest into court and dismissing plain-
tiff's action. Plaintiff excepted to the eight and ninth
findings, and to the judgment, and brings this appeal.

The matters actually put in issue by the pleadings and
the evidence were: (1) Whether the consideration actual-
ly agreed upon was expressed in the contract; (2) whether
the contract was duly acknowledged; (3) whether the
contract in evidence was the identical paper which had
been signed by the defendants.

The evidence shows that the defendants were owners
of a farm which originally consisted of 160 acres. The
right of way of the Union Pacific Railroad Company ran
diagonally through the land, taking about ten acres. The
defendants testified the price they agreed to take for the
land was $60 an acre, or $9,600, and that they understood
that Wolfe was willing to buy at that price and that the
contract was for that amount. They further testify that
no acknowledgment was taken. The contract price is not
shown to have been so disproportionate to the value of
the farm as to raise any presumption of fraud. A day
or two after the contract was signed the defendants told
a neighbor they had sold the farm for $9,000. They were
given a copy of the contract about August 12, 1910, and
several months afterward they held a sale of the personal
property on the farm and negotiated for a house and a
small tract of land for a home. It was shown that, while
Mr. and Mrs. Gill were over 70 years of age, Mr. Gill had
always conducted his own business affairs with the help
of his wife when any correspondence was required; that
Mrs. Gill was in poor health, but no mental failure or
infirmity is shown. There is a direct conflict upon al-
most every material point in the case. In such a con-
troversy the observation of the living witness often de-
termines in the mind of the court the truth or falsity of
his story, and we are disposed to give consideration to its
judgment in this respect. Taking the testimony as a
whole, we believe the district court was warranted in its
finding of facts.

Whether the conclusions of law can be supported is a more serious question. The contract is as follows: "In consideration of the sum of one hundred dollars in hand paid receipt whereof is hereby acknowledged, the undersigned Almira J. Gill and Robert Gill, her husband, hereby grant, bargain, sell and agree to convey to James Wolfe, or assigns, following described real estate, to wit: The southeast quarter (S. E. ¼) of section two (2), township fourteen (14) nórth, of range five (5) west of the 6th P. M., situated in Merrick county, Nebraska. The said James Wolfe shall have until the first day of January, 1910, and March 1, 1910, within which to pay the remainder of the consideration of said land, which is as follows: Nine hundred dollars ($900) on January 1, 1910, four thousand ($4,000) March 1, 1910, and the balance $4,000 in notes of even date with the deed maturing March 1, 1913, to be secured by first mortgage on said land, said notes to bear interest at the rate of 6 per cent. per annum from date. The undersigned also hereby agree to furnish a good and sufficient abstract showing perfect title to be in Almira J. Gill. Should said Wolfe fail or refuse to fulfil this cóntract, the amount this day paid is to be forfeited to the undersigned as liquidated damages. Signed this 28th day of July, 1909. Witness to all signatures: George Beardsley.

Almira J. Gill.

Robert Gill.

James Wolfe."

The judgment of the district court is based upon the proposition that the contract is an option contract and not one of bargain and sale, and that defendants did not so understand it. Of course, an option contract, if fairly entered into and its conditions performed, may be specifically enforced. But is this an option contract? It is an elementary rule in the construction of contracts that the construction given to a contract by the parties themselves will ordinarily be given to it by the courts. Another principle is that, in construing a contract, a construction which will make it binding and operative will

be preferred to one which would make the contract void. *Shuman v. Willets,* 17 Neb. 478.

We agree with the trial court that it was the intention of the parties to enter into a contract of bargain and sale. The only objection made to the contract by the defendants until after suit was begun was that it should have been for $9,600, $60 an acre for the whole 160 acres, instead of $60 per acre, or $9,000, for the 150 acres exclusive of the right of way. The assignee of the contract has been at all times, ready and willing to perform the contract according to its terms, but the defendants refused to perform unless the $600 additional to the amount specified was paid to them. The vendee entered upon the land and plowed about 28 acres by oral agreement, as he testifies, and defendants were given the privilege of using firewood from the place. The contract has evidently been considered by both parties at all times as a contract of purchase and sale and not as a mere option.

Aside from these considerations, we are of opinion that there is mutuality in the contract, and that it does more than grant a mere option to purchase. By its terms defendants "grant, bargain, sell and agree to convey" the land described therein. The language is that of a sale of the property with a condition subsequent that the price shall be paid, and not that of a sale of the mere privilege of buying the property. The $100 paid down and the $900 to be paid on the 1st of January is in consideration of the sale, and not until the subsequent condition that the sum of $4,000 is to be paid and a $4,000 note secured by mortgage given is the agreement to convey to be complied with. If an actual deed of conveyance had been made with the provision in a written paper signed by both parties that "Wolfe shall have until the 1st of January, 1910, and March 1, 1910, to pay the remainder of the consideration," could it with any reasonable basis be said that an obligation did not arise on the part of Wolfe to make the specified payments? The mere fact that the contract provides that if Wolfe fails to fulfil the contract the amount paid is to be forfeited as liquidated damages is not of much importance. Upon a de-

fault by Wolfe the defendants might declare the contract at an end and retain that portion of the purchase money, but it was at their option whether they would do so or would insist upon the terms of payment specified.

It is undisputed that before the 1st of January the Gills had knowledge of the assignment and notified the assignee that, unless $600 was paid in addition to the $9,000, they would not accept any more money or recognize the contract in any way. On the 3d of January the $900 was taken to defendants' residence in the attempt to tender it, but, suspecting this, they refused to answer the door or to communicate in any way with Mrs. Abel or her husband. Time was not made of the essence of the contract, and a reasonable performance is all that was necessary. Pomeroy, Specific Performance of Contracts (2d ed.) secs. 387, 388; note to *Wells v. Smith,* 31 Am. Dec. 274 (7 Paige Ch. (N. Y.) 22). We think sufficient tender has been made. There can be no objection raised as in *Rice v. Gibbs,* 40 Neb. 264, to the mortgage to secure the deferred payments being made by a third party, for two reasons: First, the contract runs to Wolfe, or his assigns; second, the date of the final payment of the note to be secured by the mortgage is long since past, so that the payment of the money with interest must be made before the defendants can be required to convey. Of course, unilateral option contracts for the sale of real estate made upon a sufficient consideration will be enforced in equity if there is no good reason for refusing the relief, and it is really immaterial as to the defendants' duty to perform whether the contract was mutual or unilateral. But this is not the reason for our decision, as we prefer to place it upon the reasons stated. Even if the contract were unilateral at first, as held by the district court, its conditions became absolute and mutual as soon as its terms were accepted. *Johnston v. Trippe,* 33 Fed. 530. A case the converse of this in some respects is *Lenman v. Jones,* 222 U. S. 51, where it was held the vendor was not relieved from a contract to sell because he thought it was an option.

Apparently Mrs. Abel and her representatives have acted in entire good faith in the matter, even to the extent of offering to submit to the demands of defendants made at the time they first repudiated the contract, in order to avoid this litigation.

Under the findings of fact made by the district court, we are of opinion that Mrs. Abel was entitled to specific performance and that her legal representatives, whether by will or descent as the case may be, are equally so entitled, upon compliance with the terms of the contract.

The judgment of the district court is therefore reversed and the cause remanded, with directions to grant the relief prayed.

REVERSED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.

The following opinion on motion for rehearing was filed May 29, 1914. *Former opinion modified:*

LETTON, J.

To avoid a possible misapprehension, suggested by the appellee in the brief on motion for rehearing, the directions to the district court are modified so as to read, "with directions to specifically enforce the contract upon full compliance with its terms, except that the right of way of the Union Pacific Railroad Company across the land shall not be included in the conveyance."

In other respects the opinion and judgment of this court is adhered to, and the motion for rehearing is

OVERRULED.

SEDGWICK, J., not sitting.