FITZGERALD ET AL. V. A. A. RICHARDSON.

[FILED SEPTEMBER 18, 1890.]

1. **Evidence:** THE PREPONDERANCE of evidence is not determined alone by the number of witnesses testifying to a particular fact. In determining upon which side the evidence preponderates, the credibility of the witnesses, their situation, interest, means of knowledge, and manner of testifying, should be considered.

2. ———. *Held,* That the verdict, to the extent of $361.75, is unsupported by the evidence, and contrary to the instructions given.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Marquett, Deweese & Hall,* for plaintiffs in error.

*Billingsley & Woodward, contra.*

NORVAL, J.

The plaintiff in the court below alleged that on April 1, 1886, he entered into the service of the defendants, at their request, as agent, to find purchasers of brick, at a commission of fifty cents per thousand for the brick so purchased; that plaintiff found purchasers for 1,248,000 brick, under said contract, and there is due him therefor as commissions, at said rate, $624, with legal interest from April 1, 1886, no part of which has been paid.

The defendants answered by a general denial.

There was a trial to a jury, with finding and verdict for the plaintiff for $530.58.

The defendants' motion for a new trial was overruled and judgment entered on the verdict. The cause is brought to this court on the following assignments of error :

" I. The verdict was given under the influence of passion or prejudice, and is contrary to law.

"II. Errors of law excepted to at the trial.

"III. The verdict is contrary to instructions numbers 1, 2, and 5, requested by plaintiffs in error.

"IV. In refusing to give instructions Nos. 3, 4, and 6 requested by plaintiffs in error.

"V. In giving instructions Nos. 3, 4, 6, and 8 requested by the defendants in error.

"VI. In giving instructions Nos. 2, 3, and 4 of the court's own motion.

"VII. The verdict is not sustained by sufficient evidence."

But three of these assignments are relied on in the brief of plaintiffs in error, which are I, III, and VII, and none others will be considered by us in this opinion.

It appears in evidence that the plaintiffs in error were engaged in the manufacture of brick at West Lincoln, and that the defendant in error was an hydraulic engineer, engaged in drawing plans and specifications for water works for several cities and towns in this state. Richardson contends that he was employed by the plaintiffs in error to find purchasers of brick, and was to receive a commission of fifty cents per thousand on all brick sold. Early in the year 1886, and at the time it is alleged that the contract was entered into, Richardson was preparing plans, or had just completed the same, for a system of water works at Hastings. It is admitted that Christianson, one of the plaintiffs in error, had a conversation with Richardson on the subject of the sale of their brick, and agreed to pay him a commission of twenty-five cents per thousand on all their brick he could sell or caused to be used, in the construction of the Hastings water works. Richardson insists that there was no limitation as to the place of sale.

A. A. Richardson, the plaintiff below, testified that he met Mr. Christianson on the train from Lincoln to Omaha and the latter showed some samples of brick he had with him. Christianson stated " If you will get customers for

us we will allow you fifty cents a thousand." This is the first time he made a bargain. Before, he said he would allow a good thing, and now he said "we will allow you fifty cents a thousand if you will get us customers." He showed witness the brick he had. Witness criticised them because they were checked. Christianson stated that they had some samples in the yard that were better and he would send them to Richardson's office. Christianson asked how many brick it would take to do the Hastings work. Richardson replied that he could not tell how many, but thought six hundred or seven hundred thousand; that it wanted hard brick for the wells, the balance of the brick for the house and stacks it did not matter whether they were burned so hard.

Q. When he said they would give you fifty cents a thousand, what did you say to that?

A. I told him "all right. I would do what I could for them—sell brick for them."

Q. Did he know then you were doing work at Hastings?

A. Yes, I told him right then and there about it. He asked me if I could not put them in the specifications—put in the specifications for their brick. I told him I would not do it, it would give them a leverage and there would be no use for any other bidders—it would not be fair; I could not put them in, but if they would make good brick I would take them down there and show them to the council and do all I could to sell them. He said, all right, we will give you fifty cents a thousand for all the customers you can get.

Mr. Richardson further testified, that he afterwards went to Mr. Christianson and told him that a large number of brick would be used in the construction of the court house at York, suggesting that the West Lincoln brick might be worked in, and inquired the price they would furnish them at. An approximate price was given and samples of the

brick furnished Richardson, which he took to York and exhibited to the county commissioners.

John Christianson testified that he was one of the firm of Fitzgerald, Christianson & Co., and that the only conversation he had with Richardson was on the train going to Omaha. The witness states: "I was sitting in the car, when Richardson came in and commenced talking with me. He was at that time making plans for the Hastings water works, he had plans and specifications with him, and was going to Omaha, and he was telling me about his plans and about the work to be carried on at Hastings, and in the general conversation he said a good many brick would be used or wanted there at Hastings, and I took occasion to ask him if he could not do anything for us to dispose of our brick for that work. He said that some 600,000 would be wanted there for some large proposed deep well, which, however, afterwards was not put in, but that was at that time the plan, which would take a large amount of brick, and then I showed him the samples which I had with me and asked him if such brick would answer his purpose; he said yes, they would. And I asked him if he could not ask if there were any good brick made there in Hastings, and he said he thought not; the brick were soft, mud brick, unsuitable for hydraulic work. And I asked him thereupon whether or not he could not specify our brick in his specifications. He said he could not do so. The conversation was short; before dropping it I told him if he could sell or cause our brick to be used there, that we would pay him twenty-five cents a thousand commission."

The testimony fully establishes a contract of agency, and that Richardson was to receive a commission on all brick manufactured by the defendants that he should sell or be instrumental in selling. The parties disagree as to the amount of compensation. That material point in the case was settled by the verdict of the jury in favor of the plaintiff below.

It is insisted that Richardson has not shown by a preponderance of the evidence that he was to receive a commission of fifty cents a thousand, for the reason that only one witness testified that the compensation agreed upon was fifty cents a thousand and another witness testified that it was twenty-five cents a thousand. The preponderance of the evidence is not determined alone by the number of witnesses testifying to a particular fact.   In determining upon which side the evidence preponderates the jury had a right to take into consideration the credibility of the witnesses, their situation, interest, means of knowledge, and their manner of testifying.   This conflict in the evidence was intrusted to the jury to settle, and when they have done so without passion or prejudice, a reviewing court will not interfere. (*Cook v. Powell*, 7 Neb., 284; *A. & N. R. Co. v. Jones*, 9 Id., 71; *Gibson v. Cleveland Paper Co.*, 13 Id., 277; *Potvin v. Curran*, 13 Id., 303; *Converse v. Meyer*, 14 Id., 191; *Murphy v. State*, 15 Id., 385; *Dutcher v. State*, 16 Id., 31; *Sycamore v. Grundrab*, 16 Id., 537; *O. & R. V. R. Co. v. Brown*, 29 Id., 492.)

It is fully established by the evidence that the A. L. Strang Co. was awarded the contract for the construction of the water works at Hastings, and that Richardson and one E. H. Calloway, then a member of the firm of Fitzgerald, Christianson & Calloway, went to Hastings in the spring of 1886, for the purpose of selling the brick manufactured by the plaintiffs in error, taking with them samples of the brick.   Mr. Calloway was introduced by Richardson to a Mr. McConnell, the secretary of the A. L. Strang Co., and Calloway, in behalf of his firm, put in a bid to furnish all the brick for the Hastings job.   Subsequently the contract was awarded to the plaintiffs in error, and they furnished under the contract 280,432 brick of their own manufacture.   Richardson was instrumental in obtaining the contract and is entitled to receive the stipulated commissions thereon.

24

The principal controversy in the case is over a claim for commissions on the alleged sale by Richardson of 1,248,000 brick to be used in the construction of a court house in York county. The contract for the erection of this building was let to D. B. Howard. Richardson went to Howard and informed him that he was representing the plaintiffs in error in the sale of their brick, and tried to sell him the brick for the building. Not succeeding, he gave Howard a letter of introduction to the plaintiffs in error, which was afterwards presented. Finally the plaintiffs in error took the contract from Howard to furnish the brick and lay them in the wall, and desired to have their West Lincoln brick specified in the agreement. Howard would not consent to this, as is disclosed by the following admission made by the defendant in error on the trial in the lower court: " It is admitted on the part of the plaintiff, that at the time D. B. Howard let the contract to these defendants, (being now plaintiffs in error) for doing the brick work and setting the stone in connection with the building of the York court house, that the defendants desired to specify in the contract that the brick manufactured in West Lincoln should be used in connection with said work, but that the contractor, D. B. Howard, refused to have any specification put in the contract."

It is in evidence that before the contract was signed Mr. Calloway went to York and made arrangements for the purchase of brick there. The contract with Howard was then entered into, and at the time it was definitely understood that the brick used should be of the York manufacture and the contract was made with that view. There were some 800,000 of the York brick used and only one car load, or 7,000, of the West Lincoln brick. Richardson contends that he is entitled to commission on the York brick and that it is immaterial where the brick that went into the York court house came from. That, doubtless, would be true, had Richardson found a purchaser for the

Fitzgerald v. Richardson.

West Lincoln brick, and the York brick had afterwards been substituted. Howard, however, never contracted for the West Lincoln brick—in fact he refused to contract for them. The agreement between the plaintiff and defendants had reference to the handling of the brick manufactured at West Lincoln by the plaintiffs in error and none others. This is admitted by Mr. Richardson on his cross-examination, and there is no evidence in the record to the contrary. Under the proof the defendant in error was not entitled to a commission on the brick purchased by the plaintiffs in error at York, and used by them in the erection of a court house at that place. The court on this branch of the case instructed the jury as follows :

" 1. If the jury find from the evidence that there was a conversation between the plaintiff and the defendants concerning the sale of brick by the plaintiff for the defendants, and the jury further find that the said conversation resulted in a contract or an agreement by which the plaintiff was to sell brick for the defendant at a stipulated price per thousand, and you further find from the evidence that the parties, at the time of the making of the contract or agreement, had reference to the sale of the brick manufactured or to be manufactured by the defendants' own brick works at West Lincoln, and you further find that the defendants were not engaged in handling or selling any other brick than those of their own make, then, before the plaintiff is entitled to recover in this action, it is incumbent upon him to show that he sold or found ·a purchaser for the brick of the defendants, manufactured by them at their yards in West Lincoln. And in· determining the fact as to what brick the plaintiff was employed to sell, if any, it is competent for you to take into consideration the fact that these defendants were engaged in the manufacture of brick at West Lincoln ; that they were handling no other brick; that they never furnished to

the plaintiff samples of any other brick than those manu-
factured by them at their yards in West Lincoln.

"2. If the jury find from the evidence that D. B. How-
ard, the contractor of the York county court house, entered
into a contract with these defendants, subletting to them
all of the brick work and the setting of the stone in the
York county court house, and that at the time said con-
tract was entered into these defendants had made arrange-
ments to use York brick in connection with the erection
and construction of said York county court house, and
that said York brick were used by these defendants, then
the plaintiff is not entitled to recover commission on said
brick used by defendants.

"5. If the jury believe from the evidence that the plaint-
iff and defendants made a contract whereby the plaintiff
was to sell brick for the defendants, and you believe from
all the evidence, by the term 'brick,' was meant the brick
manufactured by the defendants, then, before the plaintiff
can recover, he must show that he sold, or caused to be
sold, for the defendants, their brick manufactured at West
Lincoln."

Had the jury followed these instructions, which it was
their duty to do, a verdict would not have been returned
for commissions on the York brick. There were 7,000
West Lincoln brick used in the York court house, and
280,432 brick at Hastings, making in all 287,432 brick,
on which the defendant in error was entitled to a commis-
sion of fifty cents a thousand, or $143.71. To this amount
should be added $25.12 for interest thereon until the date
of the verdict.

The amount found due the plaintiff by the jury, to the
extent of $361.75, is not sustained by the evidence, and
is contrary to the instructions. Unless the defendant in
error shall file a *remittitur* with the clerk of this court
within thirty days from the filing of this opinion, as of
date of the judgment entered in the lower court, for the

sum of $361.75, the judgment of the district court will be reversed and the cause remanded for further proceedings; but if such *remittitur* shall be filed within the time named, the judgment will be affirmed for the sum of $168.83, and the costs in this court will be taxed to the defendant in error.

JUDGMENT ACCORDINGLY.

THE other judges concur.