SAMUEL M. MELICK v. HANNAH J. VARNEY.

41   105
50   489
50   697
54   516

FILED JUNE 6, 1894.   No. 4935.

1. Review: VERDICT. When the existence of a fraudulent motive was the question of fact submitted to a jury, its verdict will not be disturbed if there exists competent evidence to sustain it.

2. Fraudulent Conveyances: HUSBAND AND WIFE: BURDEN OF PROOF. In a suit between a wife and a creditor of her husband concerning property transferred to her by him after the contracting of indebtedness by him, the burden is upon the wife to establish by a preponderance of the evidence the bona fides of the transfer of the property to her. Following Carson v. Stevens, 40 Neb., 112.

3. Married Women: SEPARATE ESTATE: CONTRACTS. A married woman, in this state, may bargain for and purchase personal property, sell the same, and do all acts in relation to such property as though she was single. Following Farwell v. Cramer, 38 Neb., 61.

ERROR from the district court of Lancaster county. Tried below before FIELD, J.

*G. M. Lambertson* and *H. J. Whitmore*, for plaintiff in error.

*C. M. Parker* and *John P. Maule, contra.*

RYAN, C.

This action of replevin originated in the district court of Lancaster county, and was brought by the defendant in error against the plaintiff in error for the possession of certain horses, wagons, cattle, and farming implements. The right of possession upon which the above claim was resisted was, that plaintiff in error held his possession under and by virtue of a levy thereon made by plaintiff in error, as sheriff, of a certain execution issued on a judgment in favor of J. Fred Hutchins and James D. Parker against Leroy S. Varney and John P. Varney. Hannah J. Varney, the defendant in error, is the wife of John P. Varney, and the mother of Leroy S. Varney. The property replevied had formerly been owned by John P. Varney, by whom, on February 25, 1889, it had been conveyed by bill of sale to Hannah J. Varney. This bill of sale was filed for record in the office of the county clerk of Lancaster county on June 20, 1889. It was agreed on the trial, in open court, that on April 8, 1888, John P. Varney and Leroy S. Varney executed their promissory note for $300, with ten per cent per annum interest; that said note was not paid when due, and that suit was brought in the county court of Lancaster county on May 8, 1889, and judgment rendered June 20, 1889, for $336.60, with costs $36.30. In connection with and immediately following the above stipulation there was introduced in evidence the execution under which levy was made, indorsed with the return of the plaintiff in error, evidencing the fact of such levy. It is clear from the testimony that at the time the note above executed was given, the property replevied was owned by John P. Var-

ney, and continued to be his property until the execution of the aforesaid bill of sale.    There was no evidence indicating any change in the management or control of the chattels described in the bill of sale after its execution.    There was evidence, too, that just before the execution of the note, upon which judgment was rendered against John P. Varney, he stated to the parties contemplating taking the note, and who were afterwards therein named as payees, that he was the owner of the property which was after replevied, and that he was taken as one of the makers of said note in payment for the property sold.    The defendant in error had no knowledge of these representations, however, so far as the evidence shows.    Plaintiff in error examined John P. Varney as his own witness, from whose undisputed testimony it appears that the note, on which judgment was afterward rendered, was signed by John P. Varney as surety for his son, Leroy S. Varney, at least to the value of a team which was part of the consideration.    What proportion of the note referred to was for the team sold Leroy S. Varney was not disclosed in evidence.

It was claimed by the defendant in error that in Cedar county, Iowa, her father and mother conveyed to her and her husband forty acres of land in June, 1871, which land in March, 1873, was sold for $1,400, of which defendant in error received $1,000, which she loaned to her husband. There were introduced in evidence deeds showing transfers as above recited.    While the deed first above referred to was made to Hannah J. Varney and John P. Varney jointly, there was ample unquestioned evidence that the land was intended as a gift by the father of defendant in error to her.    For the money intrusted to John P. Varney by his wife no evidence of indebtedness was given or asked, neither was any interest paid or required to be paid.    To rebut these claims of the defendant in error no evidence was introduced, the sole reliance of plaintiff in error was on the inherent improbability of the evidence introduced

as to their existence and history.   These questions of fact were submitted to the jury for determination; the verdict, sustained by amply sufficient evidence, was in favor of the defendant in error.   In the course of the trial there was introduced in evidence a scrap of paper on which was a written assurance by the father of defendant in error.of what he proposed as to making a conveyance to her of the land which afterward formed the subject-matter of the deed which he executed.   Possibly, if it was sought to enforce a specific performance of the undertaking of which assurance of performance was given, the terms thereof would have been too indefinite, but, as indicating an intention afterward executed, though not in exact accordance with the terms of such writing, it was competent.   The court properly permitted this memorandum to be introduced in evidence for consideration by the jury.   A receipt was allowed in evidence which recited that a deed had been made by the father and mother of the defendant in error and intrusted to John P. Varney, by whom said receipt was executed.   This receipt recited the sale of the land by John P. Varney to Luke Enlow in consideration of the sum of $1,400, of which sum $1,000 was to be held by John P. Varney for the use of Hannah J. Varney.   It is true that the deed to Enlow was dated March 26, 1873, while the receipt last named bore date the 12th day of the same month.   This discrepancy was one of the facts proper to be considered by the jury, and undoubtedly it was given due weight.   This receipt was competent as showing that it was understood, long before any of the transactions out of which the levy involved herein took place, that Hannah J. Varney was entitled to receive of the sale of the land to Enlow the sum of $1,000, as in her oral testimony she claimed.

The criticisms of the instructions are very general.   As to one, it is insisted that it assumed that the father.gave the defendant in error forty acres of land, and because it

recognizes the receipt above mentioned as a valid and binding obligation for the payment of money. We do not understand how any misconstruction could have arisen as to this instruction. The evidence showed that the deed was made to defendant in error and her husband in consideration of the relationship of defendant in error to the grantors. As to the receipt, the instruction was, that if it was taken with the intention that it should be enforced, it would be legal and binding, and she could in good faith receive the property of her husband in payment thereof as against other creditors. No error is perceived in this instruction.

There is complaint made of the refusal of the court to give the ninth instruction asked by the plaintiff in error. This was in the following language: " You are instructed that if a married woman places her money or property in the hands of her husband for the purpose of enabling him to carry on his business, under such circumstances as to enable him to obtain credit on the faith of his being the owner of such money or property, and he does thereby obtain credit, she will not be permitted to assert her claim to the prejudice of other creditors of her husband; and if you believe from the evidence that the plaintiff did so advance to her husband any money, and that such money was used by the said John P. Varney in purchasing a farm and stock and implements, and that the said John P. Varney was enabled to obtain, and did obtain, credit by means of the farm and stock so purchased and on the faith of his ownership of the same, then the plaintiff will not be permitted to assert her claim as against the claims of such creditors of her husband; and if you find from all the evidence that Hutchins and Parker were such creditors, your verdict will be for the defendant." This instruction was properly refused, for by the rule therein laid down there is an inhibition upon the loan of money by a wife to her husband, since if such a loan is made for business uses

and the husband thereafter contracts other debts, the indebtedness to the wife is postponed to the priorities of such other creditors. In the case of *Goldsmith v. Fuller*, 30 Neb., 369, cited as supporting the above embodied proposition, this court said that it was probable that if the wife intrusted to her husband property, which to all appearances he absolutely controlled and disposed of as he saw fit, to all appearances as owner thereof, the wife could not assert her ownership of the property as against one who, deceived by appearances, had given credit to the husband on the faith of his apparent ownership. But the principle invoked by the instruction in question went much further than this, for by it the wife (if she loans money to her husband, with which he purchases property which he manages and controls as his own, thereby securing credit) is postponed, as to her loan, to the rights of such creditor of her husband. The instructions bearing upon this point which were given were correct statements of the rule made necessary by the intimate relations between the husband and wife, and none more exacting should have been laid down. These instructions were the fifth and seventh of those given. They were as follows:

"Fifth—The law in this state is, that transactions between the husband and wife, in regard to the transfer of property from one to the other, by reason of which creditors are prevented from collecting their just dues, should be scrutinized very closely, and it must appear clearly that such transfers were made in good faith and for value; so in this case, the dealings between the plaintiff and her husband herein, first as to the debt she claims to have been due her from him, and then the sale and transfer of the property in question by the husband to her as payment of such debt, should be closely and carefully examined into by you and fully established by the plaintiff before she can be entitled to receive the benefits therefrom."

"Seventh—And while the law is that all the transac-

tions between the husband and a wife, where the same affects in any way the creditors of either, should be closely scrutinized and fraud and unfair dealing prevented, still if, after carefully considering all the testimony in this case, the wife has established the *bona fides* of her claim, and that her husband was in fact indebted to her as claimed, and that the property was transferred to her fairly to pay a valid and existing obligation due and owing to her from her husband, and that this was done without any intention on her part of defrauding the creditors of her husband, but only a just endeavor to collect what was fairly her dues; then the transactions between the husband and wife should be as fully sustained as though made between strangers, the wife having the same right to secure her debt due from her husband, or take property in payment thereof, as any other creditor, the law, in case of dealings between the husband and wife, only requiring that the transactions should be genuine and made in good faith and without any intent to cheat or defraud the creditors, and the burden is upon the wife to show that the transactions herein were of such character."

The same rule stated in these instructions, as to the character of the proof required of transactions between husband and wife as against the creditors of either, was approved by this court in *Carson v. Stevens*, 40 Neb., 112. The other principles are sustained by *Farwell v. Cramer*, 38 Neb., 61. The judgment of the district court is

AFFIRMED.