NATIONAL BANK OF COMMERCE, APPELLEE, V. PAULINE CHAPMAN ET AL., APPELLANTS.

FILED FEBRUARY 3, 1897. No. 7047.

1. **Fraudulent Conveyances:** INSOLVENCY: RELATIVES. A debtor in failing or insolvent circumstances may prefer one creditor notwithstanding the fact it may be to the exclusion of others, and this rule may include relatives of the debtor who are his creditors.

2. ———: ———: ———: BURDEN OF PROOF. If such transfers between relatives be attacked as fraudulent, the burden is upon the parties thereto to show the good-faith character of the transactions.

3. ———: ———: ———. A son may convey property to his mother in payment of a pre-existing debt to her if such a conveyance is honestly made or without fraudulent intent to the knowledge of the mother, or participated in by her.

4. ———: ———: ———. Findings and judgment *held* contrary to the conclusions established by the evidence.

APPEAL from the district court of Douglas county. Heard below before WALTON, J. *Reversed and action dismissed.*

*W. W. Slabaugh, Isaac Adams,* and *Webster, Rose & Fisherdick,* for appellants.

*B. N. Robertson, contra.*

HARRISON, J.

April 29, 1893, the appellee herein filed in the district court of Douglas county a petition or creditor's bill, in

which it was alleged that at the September, 1892, term
of court in Douglas county, appellee recovered judgment
against Pauline and Eugene B. Chapman in the sum of
$1,126.78, which remained unpaid and on which execu-
tion issued April 13, 1893, and was returned April 29
unsatisfied; that the Chapmans were insolvent. It was
further pleaded that on July 16, 1891, Eugene B. Chap-
man and Pauline Chapman conveyed to Eliza A. Ham-
mond certain real estate specifically described, and on
February 18, 1892, conveyed to the same person certain
other described real estate, and that on April 8, 1893,
Eugene B. Chapman, being the owner of a certain lot,
lot 2, block 4, Briggs Place addition, the title of
record being in E. A. Benson, caused the lot to be con-
veyed to Eliza A. Hammond;" that the said Eliza A.
Hammond paid no consideration for the said lot and
that all the said consideration therefor was paid by the
said defendant Eugene B. Chapman; that all the said
several conveyances herein set forth, by the said Chap-
man to the said Hammond, were made without consider-
ation and for the purpose of preventing the plaintiff from
collecting its said judgment, as the said defendant Eliza
A. Hammond well knew; that the title to said premises
now stands in the name of the said defendant Eliza A.
Hammond, but that the said Eugene B. Chapman is the
actual owner of the same." The relief sought was to
subject the real estate to the payment of appellee's judg-
ment. The defendants' answer admitted the convey-
ances of the real estate, but denied "that said conveyances
were made by said grantors, or received by said grantee,
with any intention to defraud plaintiff in the collection
of its judgment, or to hinder or delay said plaintiff in
such collection, or to hinder, delay, or defraud any other
creditor of said grantors or either of them;" and further
pleaded as follows: "Defendants allege that at the time
of said conveyances, and long prior thereto, defendant
Eugene B. Chapman was indebted to defendant Eliza
A. Hammond in a large amount, and that said convey-

ances were made for the purpose of liquidating, in part, said indebtedness, and that said Eliza A. Hammond paid full value for the real estate so conveyed to her. Defendants deny the allegations of said petition respecting the transfer to said Eliza A. Hammond of lot two (2) in block four (4), in Briggs Place addition." The reply was a general denial. There was a trial of the issues, and a decree for appellee in which appeared a finding that the several conveyances were made with the intent on the part of the grantors, the Chapmans, to defraud, hinder, and delay the plaintiff (appellee), of which intent the grantee, Eliza A. Hammond, had full knowledge at the time. From the decree this appeal has been perfected.

It was admitted at the trial that Pauline and Eugene B. Chapman executed and delivered to appellee a promissory note of date February 3, 1891; that action was commenced thereon and judgment obtained during the September, 1892, term of the district court in Douglas county in the amount of $1,126.78; that execution had issued and been returned of date and indorsed as stated in the petition; that the Chapmans were insolvent and possessed no property liable to execution; also, that the conveyances of real estate by Chapman and wife to Eliza A. Hammond were made of the dates set forth in the petition and the titles thereto stood of record in the name of Eugene B. Chapman on the date of the execution of the note to appellee, to-wit, February 3, 1891. It was also admitted that Eliza A. Hammond was the mother of Eugene B. Chapman. There was no admission in regard to the conveyance of the title of a lot by E. A. Benson to Mrs. Hammond.

It appears from the evidence that Mr. Hammond, the second husband of Eliza A. Hammond, died during the year 1882, having at that time insurance on his life amounting to the sum of $11,000, and of which Eliza A. Hammond was the beneficiary and from which she received very nearly the whole amount, some $200 or $300 less than the face of its policy being paid by one of the

companies or associations. That in September, 1882, Eugene B. Chapman, her son by a first husband, engaged in the wholesale grocery business in the city of Omaha and soon afterwards purchased, with money furnished him by his mother, and for her, lots 15 and 16, in block 7, Reed's first addition to the city of Omaha, taking the title thereto in his own name. Mrs. Hammond, whose home was in St. Louis, removed to Omaha, April, 1883, and soon after, probably during the next month (May), the title to the two lots last described was conveyed to her and she took possession of the property and occupied and used it. January 2, 1885, Mrs. Hammond conveyed to Pauline Hax, who three days later became the wife of Eugene B. Chapman, lot 16 in Reed's first addition to Omaha, receiving as a consideration therefor the promissory note of Chapman in the sum of $6,000. On March 13, 1888, Mrs. Hammond deeded to Mrs. Chapman the lot 15 in the addition last mentioned, the consideration being $10,000, evidenced by a promissory note for the whole sum, signed by the Chapmans and the payment thereof secured by mortgage on the property. We will state here that it clearly appears that the property had increased in value and was fully worth the prices which Chapman agreed to pay his mother for it. On March 11, 1890, Chapman desired to procure a loan on the property, and at his request his mother released the $10,000 mortgage. She then had the one note for $6,000 and also the $10,000 note without any security for the payment of the total amount of the indebtedness evidenced thereby. During the year 1887 Chapman discontinued the grocery business and acquired some property and interests in mines in the Black Hills in Dakota, and was buying and accumulating real estate, or interests therein, in Omaha and South Omaha. In January, 1891, Mrs. Hammond gained the knowledge that her son had lost and was losing money in his business ventures and she asked for security or settlement of some nature, and later in the year, or in July, the first deed of which complaint is

made in the petition was executed to her by Chapman and wife, the consideration being the cancellation of the debt evidenced by the $10,000 note, on which there had been paid prior to this time $1,000, so that the debt was, in round numbers, $9,000. On February 18, 1892, there was conveyed to her, by her son and his wife, certain property in payment of the amount due on the $6,000 note. This was also one of the conveyances attacked by the creditor's bill in this case. We will say here that we are satisfied from a consideration of the evidence in regard to the conveyance of lot 2, block 4, Briggs Place addition, from E. A. Benson to Mrs. Hammond, the validity of which was also drawn in question by the petition, and in issue in this case, was made pursuant to an exchange of lots between Benson and Mrs. Hammond. It is true the son, Chapman, conducted the negotiations, but it is quite clear that it was for his mother and not himself.

We must conclude, after a careful examination of the evidence, that it disclosed a valid indebtedness of the son to the mother, existing and due her at the time the transfers herein assailed were made to her. The son received the mother's money and invested it in property for her, conveyed it to her, and afterwards became its purchaser, and thereby her debtor in the amount of the consideration; that this debt was still in existence, valid and subsisting at the dates of the conveyances of property to her in payment of it. It clearly appears that Mrs. Hammond had full knowledge of and accepted the transfers of the property to her and for the purpose for which they were made. She dealt with some of the property as hers after the transfers. That the Chapmans were in failing circumstances financially, or insolvent, at the times of the conveyances to Mrs. Hammond, constituted at most a fact tending to prove fraud in the transfers. It is the settled rule that a failing or insolvent debtor may prefer one creditor to the exclusion of others, and may pay a *bona fide* demand of one creditor

in preference to those of others. (*Elwood v. May*, 24 Neb., 373; *Lininger v. Raymond*, 12 Neb., 19; *Bank of Commerce v. Schlotfeldt*, 40 Neb., 212; *Meyer v. Union Bag & Paper Co.*, 41 Neb., 67.) And relations are included within the rules just announced. (*Melick v. Varney*, 41 Neb., 105.) See, also, *Ward v. Parlin*, 30 Neb., 376, wherein it was stated: "We have read and scrutinized the evidence in this record with care and it appears to us that the defendant's testimony is consistent and reasonable. We are convinced that Mrs. Ward acted in perfect good faith. True, she knew that her husband was being pressed by his creditors and asked him to secure her. She had a perfect right to make good her claim notwithstanding she knew she was being preferred to other creditors of her husband, if the security was accepted in good faith and without any fraudulent purpose on her part. (*Hill v. Bowman*, 35 Mich., 191; *Jordan v. White*, 38 Mich., 253; *Dice v. Irvin*, 11 N. E. Rep. [Ind.], 488; *Rockford Boot & Shoe Mfg. Co. v. Mastin*, 39 N. W. Rep. [Ia.], 219; *Miller v. Krueger*, 13 Pac. Rep. [Kan.], 641; *Chapman v. Summerfield*, 14 Pac. Rep. [Kan.], 235; *Cornell v. Gibson*, 16 N. E. Rep. [Ind.], 130.)" But in this state, if the good faith of the transaction is attacked, the burden is cast upon them to establish its fairness or good faith character. (*Carson v. Stevens*, 40 Neb., 112; *Melick v. Varney, supra.*) There was evidence sufficient to sustain a finding that Chapman had an intent to defraud his creditors, especially appellee, but it is well settled that this, if it existed, would not affect or destroy the right of any of the creditors, including Mrs. Hammond, to secure a preference if not possessed of knowledge of such fraudulent intent. (*Smith v. Schmitz*, 10 Neb., 600; *Edwards v. Reid*, 39 Neb., 645.) The evidence did not show that Mrs. Hammond had any knowledge of any intent on the part of her son to defraud his creditors, or connect her therewith in any manner, but we think established her good faith throughout the transactions prior to and including the conveyances herein sought to be set aside. This being true, it

follows that the decree of the district court must be reversed and the petition of appellee dismissed.

JUDGMENT ACCORDINGLY.