CLARKE DRUG COMPANY ET AL., APPELLANTS, V. GEORGE
M. BOARDMAN ET AL., APPELLEES.

FILED FEBRUARY 16, 1897.  No. 7084.

1. Insolvency:  PREFERRING CREDITORS.  A creditor may take such
lawful steps as he deems best to secure the payment of a debt
owing to him; and if the creditor's only motive be the honest one
of securing his debt, he will not be guilty of fraud because the
effect of securing or paying his debt is to leave some other cred-
itor's debt partly or wholly unpaid.

2. ———: ———: RELATIVES: CONFESSION OF JUDGMENT: CREDITORS'
BILL.  For the purpose of enabling him to buy a drug store and

engage in business, a mother loaned her son, who had no property, $1,500. For this loan he gave her his note due in one year. He purchased the store for $2,000, paid thereon the cash borrowed of his mother, and gave his note for $500 for the balance. While he was in business he represented to wholesale dealers that his only indebtedness was the $500 owing on the purchase of the store, and concealed the fact of his indebtedness to his mother. The wholesale dealers sold the son goods and extended him credit, ignorant of the fact that he was indebted to his mother and relying upon his statement that his total indebtedness was the $500. After the mother's note matured she ascertained that her son was financially embarrassed; induced him to confess a judgment in her favor for the amount due her on her note; and caused the drug store to be seized and sold on execution. Thereupon the wholesale dealers sought, by a suit in equity, to have their judgments against the son paid out of the proceeds of such sale before the payment of the mother's judgment. *Held,* (1) Whether the money furnished to the son by the mother was a loan, a gift, or an advancement, whether or not the mother was actuated by a sinister motive in furnishing the money to her son at the time and under the circumstances that she did, in doing nothing to notify the public of such fact, in inducing her son to prefer her to his other creditors at a time when he was financially embarrassed and in resorting to the confession of judgment for that purpose, were, one and all, questions of fact; (2) that the evidence would not support any other finding than the one made by the district court, that the money furnished by the mother was a loan, and that her entire conduct in the premises was inspired by an honest purpose and that in nothing that she did was she influenced by a motive to defraud any one.

3. ———: ———: ———: Estoppel: Proceeds of Execution. *Held,* That the mother was not estopped from claiming the proceeds of the execution sale as against her son's other creditors because he had no property when she made him the loan; nor because to her knowledge the son borrowed the money to purchase the drug store; nor because to her knowledge the son embarked and continued in business, his only capital being the money she had loaned him; nor because she did not give any notice of the fact that the capital on which her son was doing business was loaned to him by her, and unpaid; nor because she did not take and file a chattel mortgage on the drug store to secure the loan when it was made; nor because the son concealed from the wholesale dealers the fact that he was indebted to his mother and thereby induced them to extend him credit; nor because the effect of the son's preferring her debt was to leave the debts of his other creditors partly or wholly unpaid; nor because she resorted to a confession of judgment to secure such preference and expedite its payment.

4. ———: ———: ———: Burden of Proof. An insolvent son may

prefer his mother to his other creditors by securing or paying her debt; but when such preference is called in question by the other creditors the law places the burden on the mother of showing by a preponderance of the evidence that such preference was accepted by her in good faith for her protection, and not for the purpose of defrauding any one.

APPEAL from the district court of Hamilton county. Heard below before WHEELER, J.   *Affirmed.*

*A. W. Agee, Howard M. Kellogg,* and *Whitmore & Carr,* for appellants.

Cases cited by counsel for appellants are referred to in the opinion.

*Hainer & Smith* and *Howell & Spear, contra.*

RAGAN, C.

In the district court of Hamilton county George M. Boardman confessed a judgment in favor of his mother, Mary T. Boardman, on a promissory note.   An execution was issued upon this judgment and levied upon a stock of drugs belonging to George M. Boardman, the stock sold, and thereupon a number of his other creditors, who had obtained judgments against him and whose executions had been returned "No property found," brought this action to enjoin the sheriff from paying the proceeds of the sale of said stock of goods to George M. Boardman's mother.   The trial resulted in a decree dismissing the action of the creditors, and they have appealed.

1. Briefly, the facts are as follows: In June, 1891, Frank Chambers owned a drug store and stock of drugs at Hampton, Nebraska.   At that time Mary T. Boardman and her husband resided at Albion, Nebraska, and she had considerable property of her own.   Her son, George M. Boardman, was then a married man and had been for some years employed as a drug clerk, but was without any property, and desired to embark in the drug

48

business. Chambers advertised his Hampton store for sale. This advertisement was seen by George M. Boardman, and he and his father then went to Hampton and looked over the drug stock of Chambers. Negotiations followed which resulted in Chambers selling his drug stock to George M. Boardman for $2,000. Fifteen hundred dollars of this money was loaned to George M. Boardman by his mother, and for this he executed a promissory note, due in one year. The remainder of the purchase price of the stock was evidenced by some promissory notes executed by Boardman to Chambers. George M. Boardman continued the operation of the drug store for about a year, during which time he became indebted to several wholesale houses, hereinafter called "commercial creditors." While he was in business he made certain statements to commercial agencies that his only indebtedness was the $500 owing to Chambers as the balance of the purchase price of the drug stock, and concealed the fact that he was indebted to his mother. After George M. Boardman had been in business about a year, and after the note given to his mother had matured, his mother ascertained that he had been using intoxicants to excess, and that his financial affairs were in an embarrassed condition; and at her request he confessed a judgment in her favor upon the note which he had given her for the money borrowed. It also appears from the evidence that the commercial creditors, relying upon the statements made by George M. Boardman to the commercial agencies that his only indebtedness was that of $500 to Chambers, sold him goods and extended him credit. It does not appear that the commercial creditors, or any of them, knew that George M. Boardman was indebted to his mother, nor does it appear that Mrs. Boardman knew until the trial of this case that her son had represented his only indebtedness to be the $500 owing Chambers, and had concealed from the commercial creditors the fact of his indebtedness to her.

The commercial creditors seek to restrain the sheriff

from paying to Mrs. Boardman the proceeds of the execution sale of the drug store upon two grounds, as we gather from the petition filed by them in the court below. The first of these is that the entire transaction between Mrs. Boardman and her son was fraudulent; that it was a scheme devised to delay and defraud them; and second, that by reason of the facts already stated Mrs. Boardman is estopped as against them to claim the proceeds of the sale of the drug stock. The district court has found that there was no fraud on the part of either Mrs. Boardman or her son in any of the transactions between them, and this is the only finding on that issue that the evidence would support. Some attempt was made at the trial to show that the $1,500 furnished by Mrs. Boardman to her son was in the nature of an advancement to him, but this attempt was a failure. The evidence leaves no room for doubt that it was an ordinary loan.

It seems also to have been insisted in the trial court that the confession of the judgment by young Boardman in favor of his mother was fraudulent, as its effect was to enable him to prefer his mother as a creditor. It may be true that young Boardman desired to prefer his mother, and it may be true that she desired to be preferred; and it is probably true that she realized that by her inducing her son to confess a judgment in her favor she would be more likely to secure the payment of her debt; but if she knew these facts, and if her knowledge of the embarrassed financial circumstances of her son prompted her to induce him to confess a judgment in her favor, still all this would not be conclusive evidence of a fraudulent intent on her part. A debtor has the right to prefer one creditor to another if the preference is made and accepted in good faith. And while the evidence shows that young Boardman was willing to prefer his mother, and she was anxious to secure the payment of her debt, and took the step she did for that purpose, still the evidence would not warrant the conclusion that she

accepted this confession of judgment for the purpose of hindering, delaying, or defrauding the other creditors of her son. It is not a fraud, nor evidence of fraud, for a creditor to be vigilant in the collection or securing of a debt due to him from a debtor. A creditor may take such lawful steps as he deems best to secure the payment of a debt due him from a debtor, though the latter be in failing circumstances and largely indebted to others; and if his motive be the honest one of securing his own debt, he will not be guilty of fraud because the effect of securing or paying his debt is to leave some other creditor's debt partly or wholly unpaid. No rule of law or equity forbids a creditor to exercise diligence for his own protection. If the motive which prompts his conduct in collecting or securing the debt is the honest one of self-preservation the law will protect him, no matter what may be the effect on other creditors. So long as his conduct is not prompted by a sinister motive to hinder, delay, or defraud other creditors, he is entitled to all the advantage which his diligence, knowledge, and vigilance give him; and since in the case at bar the confession of judgment was brought about without any intention upon the part of Mrs. Boardman to hinder, delay, or defraud the other creditors of her son, they cannot be heard to charge fraud because the effect of the confession of judgment was to give Mrs. Boardman a first lien upon the property of their common debtor.

2. It is insisted by the commercial creditors that because Mrs. Boardman loaned to her son the capital which he invested in the drug business, she thereby enabled him to hold himself out to the world as the owner of the drug stock, and to contract debts on the strength of his being the owner thereof; and that, therefore, she is estopped from now claiming the proceeds of the execution sale. If this contention be correct, it must be because Mrs. Boardman has done, or omitted to do, something which she was under a legal or equitable obligation to do or omit to do, and that by reason of her conduct the com-

mercial creditors have changed their status, to their in-
jury.   What has she done?   She loaned her son the capi-
tal which he invested in business, and when his debt to
her matured she took steps to secure its payment.   Cer-
tainly she violated no rule of morals or law in doing
either of these things if the motives which prompted her
to these actions were honest, and if she was innocent,—
and we have seen that she was,—of any intention to de-
fraud these commercial creditors.   What has she omitted
to do?   She did not advise the world that she had loaned
her son money to buy this drug stock; nor was she under
any legal or moral obligation to do so.   She did not take
a mortgage upon this stock and file it, and thus give
notice to the world of her claim; nor was it her duty so
to do.   No mortgage was offered her and she requested
none.   She kept silent in regard to the debt which her
son owed her, but under circumstances when it was not
her duty to speak; and her silence was not a concealment
of her claim against her son, either for the purpose of
assisting him or injuring others.   When her debt matured
she did not notify her son's other creditors that she was
about to take steps to secure its payment, and we know
of no rule of law or morals that made it her duty to give
such notice.   It is true that the commercial creditors fur-
nished the son goods and extended credit to him, believ-
ing his only indebtedness to be the $500 that he owed
Chambers, and by so doing they have changed their
status to their injury.   But the proximate cause of their
action and their injury was not the loan made by Mrs.
Boardman to her son, but the false statements made by
the son to them.   Mrs. Boardman at no time had any in-
terest in or control over this stock of drugs.   The son
was not her agent.   He was her debtor, and she is not
bound or estopped by any representation that he made,
as she neither induced him to make such statements nor
knew they had been made.   Suppose that wholesale
dealer A had sold young Boardman $5,000 worth of goods
on credit and he had put them into his stock, and while

these goods were on hand another wholesale dealer, B, had inquired of young Boardman if he owned these goods and if he was in debt, and he had replied that he owned the goods and that they were paid for, and upon the strength of that representation B had sold more goods to young Boardman and extended him credit therefor. Is there any rule of law or equity that would postpone A's debt to B's? And yet the principle which controls the point under consideration is precisely the principle that would control a contest between A and B if B were claiming that by reason of A's conduct his claim against young Boardman should be postponed.

Counsel for the appellants, to sustain their contention that Mrs. Boardman is estopped as against these commercial creditors to claim the fund in question, have cited us to several authorities, which we will now briefly review.

The first case cited is *Webb v. Armistead*, 26 Fed. Rep., 70. In that case Armistead's relatives loaned him the capital with which he embarked in business. He afterwards failed and made an assignment for the benefit of his creditors, preferring his relatives who had loaned him the money with which he started in business, and the court held that the deed of assignment was void on its face because of the extraordinary powers and discretion which it conferred upon the assignee named therein. Counsel for the appellants here insist that the court also decided that the preference given to his relatives by Armistead was void as against his commercial creditors, because this preference was in fact the only capital which Armistead put into his business. We do not think the decision of the case turned upon that point, and if it did, we are not prepared to follow it. In that case, as in the case at bar, it was shown that the debtor had made statements to the commercal agencies as to his indebtedness and concealed the fact that he was indebted to his relatives; that the commercial creditors relied upon these statements and sold him goods and extended him credit upon the faith of them. But there is in the case no refer-

ence whatever to the fact that the commercial creditors changed their status, not by reason of the fact that Armistead's relatives had loaned him capital, but because they relied upon his false statements.

*Smith v. Sipperly*, 34 Pac. Rep. [Utah], 54, is another case cited by counsel for appellants. But this case follows the holding of the federal court in the *Armistead Case*, and adopts its opinion without discussion or examination.

Another case cited is *Krippendorf v. Hyde*, 28 Fed. Rep., 788. The court said: "If a creditor of a commercial firm whose insolvency is known to him, but not to the public, helps the firm to keep going and to extend largely the scope of its business and credit, under a promise of preference over other creditors in case of disaster, which under the circumstances is clearly probable, and the firm, having obtained large quantities of goods on credit, turns them over to this creditor in payment of his demands, keeping nothing for other creditors, the transfer of the goods will be deemed fraudulent." The opinion in the case was written by Woods, J., and the preference seems to have been held fraudulent because of a secret promise therefor made by the commercial firm at the time the creditor loaned it money. The case is not in point here and the learned judge cites no authority to support the conclusion reached by him; and in addition to this the same judge, in *Smith v. Craft*, 17 Fed Rep., 705, in an able opinion in which the authorities are examined, held that a preference given by a failing debtor in pursuance of a promise made when he obtained the loan, to make such a preference in case of his failure would not be set aside as fraudulent at the instance of other creditors unless a fraud was intended. And again in *Lippincott v. Shaw Carriage Co.*, 25 Fed. Rep., 590, the same judge made the same ruling that he did in *Smith v. Craft, supra*. In view of these contradictory decisions of the *nisi prius* federal courts, we do not feel bound to follow the rule announced in the *Armistead Case*.

Another case cited by counsel for appellants is *White v. Heimerdinger*, 17 N. Y. Supp., 888. In that case a mother gave to her son a letter addressed "To Whom It Might Concern," stating that she had loaned him $10,000, "to be paid back at his option, and leave same to him at the risk of his business for five years." This letter was shown to commercial agencies and through them to a commercial creditor, who sold the son a large amount of goods on credit on the faith of this letter. In less than a year after the date of the letter the son became insolvent, and confessed judgment in his mother's favor for the amount of the loan made by her to him; and the court held,—and correctly, we think,—that the commercial creditor's claim took precedence of the mother's; but that case is not in point here. As said by Lawrence, J., in the opinion, it is perfectly clear that it was the mother's intention to lead commercial creditors who might see and rely upon her letter to believe that the $10,000 which she had loaned to her son was to be at the risk of the business, and subject to all its hazards. The very object that the mother had in writing the letter was to give notice to the world that the $10,000 which she had loaned her son to invest in business was, for at least a period of five years, to be considered and regarded by persons dealing with him as his.

Another case cited by appellants is *Roy v. McPherson*, 11 Neb., 197. In that case Mrs. Roy put into the hands of her brother a sum of money with which to purchase land for her. The brother purchased the land, but took the title in the name of Mrs. Roy's husband. This was in 1864. Mrs. Roy knew that the title to the land had been placed in her husband's name at the time it was done. She acquiesced in this for thirteen years. During this time her husband engaged in mercantile business and contracted debts upon the faith of his being the owner of this land. The husband failed and a contest arose between his creditors and Mrs. Roy as to the title to this land, and we held that Mrs. Roy had estopped herself to

claim this land as against her husband's creditors.   But
that case is not an authority for the contention under con-
sideration.   Mrs. Roy owned the equitable-title to this
land.   Her husband held it in trust for her and she kept
the trust a secret.   It was her duty to speak and she kept
silent, and her silence caused her husband's creditors to
change their status to their injury, and she was rightly
held estopped as against them from claiming the land.
But Mrs. Boardman did not own the drug stock or any
interest in it.   Her son did not hold this drug stock in
trust for her.   She is not here claiming to be the owner
of this drug stock or any interest in it.   Her attitude
here is that of a creditor.   She did not keep silent at any
time when it was her duty to speak, and no creditor of her
son was induced to change his status because of Mrs.
Boardman's silence.

Other cases cited by appellants are *Early v. Wilson*, 31
Neb., 458, and *Swartz v. McClelland*, 31 Neb., 646.   These
cases follow the rule announced in *Roy v. McPherson*, and,
for reasons already stated, are not in point here.

The transactions out of which this suit grew occurred
between parent and child, and if the decree of the district
court shall be affirmed its result will probably be to de-
prive the other creditors of young Boardman of their
debts; and because of these facts, the law has placed
on this mother the burden of showing by a preponderance
of the evidence that her conduct in the premises and the
motives which inspired it were honest; that the entire
transaction was in good faith, and that in nothing that
she did was there any intention to defraud the son's other
creditors.   (*Plummer v. Rummel*, 26 Neb., 142; *Ward v.
Parlin*, 30 Neb., 376; *Percgoy v. Krantz*, 31 Neb., 58; *Carson
v. Stevens*, 40 Neb., 112; *Melick v. Varney*, 41 Neb., 105;
*Glass v. Zutavern*, 43 Neb., 334; *Steinkraus v. Korth*, 44
Neb., 777.)   But this is merely a rule of evidence and
owes its origin to the fact that the relationship existing
between members of the same family is not only an in-
ducement for them to protect one another, but affords

opportunities for the perpetration of frauds. But business transactions between relatives are not forbidden by law, and, subject to the rule of evidence just stated, such transactions between them are governed, and the rights and liabilities of the parties thereto are determined, in the same manner as if they were strangers; and the preference made by young Boardman to his mother was neither fraudulent, illegal, nor inequitable, because of the fact that the loan represented by the preference was the only capital with which young Boardman embarked in business. (*Laird v. Davidson*, 25 N. E. Rep. [Ind.], 7; *Hegeler v. First Nat. Bank of Peru*, 21 N. E. Rep. [Ill.], 812; *Buhl v. Peck*, 37 N. W. Rep. [Mich.], 876; *Tomlinson v. Matthews*, 98 Ill., 178; *City Bank v. Wright*, 26 N. W. Rep. [Ia.], 35.) Mrs. Boardman has shown beyond all question that her conduct in lending her son money to embark in business and inducing him to confess a judgment in her favor was actuated with honest motives and free from any sinister purpose to defraud her son's other creditors; that she has done nothing nor omitted to do anything which caused his creditors to change their status, and she is therefore entitled to have the amount of her judgment paid in full from the proceeds of the execution sale. The decree of the district court is accordingly

AFFIRMED.