BELLE S. B. HARVEY, APPELLANT, V. CORDELIA J. GODDING
ET AL., APPELLEES.

FILED OCTOBER 4, 1906.   No. 14,420.

1. **Judgment Lien**: APPEAL. An appeal by a judgment defendant to this court does not in the absence of a supersedeas, operate to prolong the life of the judgment lien.

2. ————: ————: REMAND. The provision of section 509 of the code, relative to a judgment lien dating from the filing of a special mandate from this court in the lower court, has exclusive reference to the special mandate required by section 594 thereof, in case this court, upon reversal of a judgment in whole or in part, renders such judgment as the lower court should have rendered, instead of remanding the cause with directions to the lower court to render such judgment.

3. **Execution Sale**: DORMANT JUDGMENT. A sale of real estate under an execution issued on a dormant judgment is void as to one who acquired title to the property from the judgment debtor during the life of the judgment lien. *Gillespie v. Switzer*, 43 Neb. 772, and *Link v. Connell*, 48 Neb. 574, modified.

4. **Attachment Lien**: DORMANT JUDGMENT. In an action aided by attachment, upon the entry of judgment the attachment lien is merged in that of the judgment, and thereafter the lien is a mere incident to the judgment and ceases to exist when the judgment becomes dormant.

5. **Fraudulent Conveyance**: HUSBAND AND WIFE. A gift from a husband to his wife executed when the former was solvent, and not made in contemplation of insolvency or of engaging in some hazardous enterprise, will be upheld, if not excessive, considering the husband's circumstances at the time the gift was made.

6. **Evidence** examined, and *held* to establish the *bona fides* of a conveyance from a husband to his wife.

APPEAL from the district court for Otoe county:  PAUL JESSEN, JUDGE. *Reversed with directions.*

*E. F. Warren,* for appellant.

*W. F. Moran* and *W. A. Corson, contra.*

22

ALBERT, C.

The plaintiff, Belle S. B. Harvey, brought this suit to quiet the title to certain real estate in Otoe county. The controversy is between her and the defendant Cordelia J. Godding and we shall refer to them hereafter as plaintiff and defendant, respectively. The defendant Asa Godding is the husband of Cordelia J. Godding, and claims some interest by virtue of such relationship, but not otherwise. The defendant Mohrman is in possession of the property claiming as tenant of Mrs. Godding. Plaintiff's husband is the common source of title. The plaintiff claims under a deed executed and delivered to her by her husband on the first day of June, 1895, which was filed for record and recorded on the 17th day of December, 1897. The defendant bases her claim of title to the property upon the following state of facts: On the 14th day of December, 1892, the First National Bank of Omaha commenced an action aided by attachment against the plaintiff's husband. The writ was levied upon the property in question on the 19th day of December of the same year. On the 25th day of March, 1895, a judgment was rendered against the plaintiff's husband for a certain amount and an order entered directing a sale of the attached property. The judgment defendant prosecuted error to this court, without a supersedeas, where the judgment of the district court was affirmed on the 20th day of October, 1898. For some reason a mandate did not issue until the 5th day of January, 1900, when one issued commanding the district court "to cause execution to issue carrying into effect your (its) said judgment," and which was filed in the district court on the 2d day of April, 1900. The first writ issued to enforce the judgment was an order of sale issued on the 7th day of September, 1901, whereunder the property was sold. The sale was confirmed and a sheriff's deed executed to the purchaser on the 9th day of November of the same year. The purchaser at the sheriff's sale subsequently conveyed to the defendant. The district court dismissed the bill, and the plaintiff appeals.

The plaintiff contends that, because more than five years had intervened between the date of the judgment against her husband and the issuance of the order of sale thereon, the judgment was dormant and not a lien against the property when the order of sale issued, and, consequently, that the sale of the property under such order of sale was ineffective to divest her title. On the other hand, the defendant contends: (1) That the period during which a judgment remains alive and continues to be a lien upon the real estate of the judgment debtor is to be computed in this case from the second day of April, 1900, the date upon which the mandate from this court was filed in the district court commanding the district court to enforce the judgment against the plaintiff's husband, and, consequently, that the judgment was alive and a lien upon the property when the order of sale issued and the sale was made thereunder. (2) That, even if the judgment had become dormant, and had ceased to be a lien against the property at the time the order of sale issued, the sale and subsequent proceedings under said judgment are not void, but merely voidable, and cannot be assailed in a collateral proceeding.

The defendant's first contention is based on one of the provisions of section 509 of the code. That section, so far as is material at present, is as follows: "No judgment heretofore rendered, or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of five years next after its rendition, shall operate as a lien upon the estate of any debtor, to the preference of any other *bona fide* judgment creditor (or purchaser); but in all cases where judgment has been or may be rendered in the supreme court, and any special mandate awarded to the district court to carry the same into execution, the lien of the judgment creditor shall continue for five years after the first day of the next term of the district court to which mandate may be directed." The defendant insists that the mandate from this court on the judgment against plaintiff's husband

was a special mandate within the meaning of the foregoing section. Dictum may be found sustaining this position, but we do not think it is tenable. We think the special mandate referred to in that section is the special mandate required in section 594 of the code. That section is as follows: "When a judgment or final order shall be reversed either in whole or in part, in the supreme court, the court reversing the same shall proceed to render such judgment as the court below should have rendered, or remand the cause to the court below for such judgment; and the court reversing such judgment or final order shall not issue execution in causes that are removed before them on error, on which they pronounced judgment as aforesaid, but shall send a special mandate to the court below, as the case may require, to award execution thereupon; and it shall be the duty of the judges of the supreme court to prepare and file their opinion in every case as brought before them, within sixty days after the decision of the same, and no mandate shall be sent to the court below until the opinion provided for by this section has been filed. The court to which such special mandate is sent, shall proceed in such case in the same manner as if such judgment or final order had been rendered therein, and on motion and good cause shown, it may suspend any execution made returnable before it by order of the supreme court, in the same manner as if such execution had been issued from its own court, but such power shall not extend further than to stay proceedings until the matter can be further heard by the supreme court." The foregoing section deals with cases wherein this court has rendered a judgment of reversal. In such cases it is optional with this court either to proceed to render such judgment as the court below should have rendered or to remand the cause to the court below for such judgment. It provides that in case the former course is pursued and the proper judgment rendered in this court, this court may not issue execution on such judgment, but shall issue a special mandate to the court below to award execution

"thereupon." By the provision of section 509, therefore, in case this court should render "such judgment as the court below should have rendered," instead of remanding the cause for such judgment, the judgment rendered by this court would continue to be a lien on the property of the judgment defendant for five years from the date of filing the special mandate in the district court. The two sections should be read together, the one providing a means whereby judgments rendered in this court may become a lien upon the real estate of the debtor in the county from which the proceedings in error were prosecuted, the other as fixing the period during which the lien shall continue. Both sections refer to a "special mandate." The latter shows the sense in which the makers of the code used the term. There is nothing in the code to indicate that they used it in any other sense. It is clear to us that the special mandate referred to in section 509 is the special mandate required by section 594 to be issued to the lower court commanding it to execute a judgment rendered by this court upon the reversal of a judgment of such lower court in whole or in part, and has no application to a case like that of the plaintiff's husband, where the only judgment of this court was one affirming the judgment of the lower court and which called for no special mandate. As execution on the judgment against the plaintiff's husband was not stayed pending his appeal to this court, it would follow that the judgment became dormant and ceased to be a lien upon his property at the end of five years after its rendition and before the order of sale in question issued.

The defendant's second contention involves this question: Is a sale of real estate under an execution issued on a dormant judgment void, or merely voidable, as to a grantee of the judgment debtor who took title from the judgment debtor while the judgment was alive and a lien on the property? Three cases decided by this court are relied on as sustaining the proposition that a sale thus made is not void, but merely

voidable. The first is *Gerecke v. Campbell*, 24 Neb. 306. That case, however, is not in point. There an execution had issued on a dormant judgment and had been levied on a crop of growing corn. The judgment debtor thereupon paid the judgment, and the levy was released. He afterwards brought suit against the justice who issued the execution, claiming that he had paid the judgment under duress. The question finally presented was whether the execution was void, or merely voidable, and this court held that it was voidable, but not void. It will be observed that there the execution was assailed by the judgment debtor himself. Here a sale of real estate under an execution issued on a dormant judgment is assailed by the plaintiff, who held title to the property as grantee of the judgment debtor when the execution issued and the sale thereunder was made. The distinction between the two cases is obvious. The second case relied on is *Gillespie v. Switzer*, 43 Neb. 772, and the third is *Link v. Connell*, 48 Neb. 574. In these cases the sales sought to be avoided were each made under a decree of foreclosure of a mortgage. In each case the sale was attacked by one claiming title by conveyance, mediate or immediate, from the mortgagor subsequent to the mortgage, and on the ground that more than five years had intervened between the date of the decree and the date of the issuance of the order for the sale of the property. Both cases might have been disposed of on the ground that the provisions of the code with respect to the time when a judgment becomes dormant and ceases to be a lien on the real estate of the judgment debtor have no application to a decree in equity for the sale of specific real estate, as was held in *Herbage v Ferree*, 65 Neb. 451. But the court put both decisions on substantially the same ground, namely, that a sale of real estate to satisfy a judgment which has bcome dormant under the provisions of section 482 of the code is voidable only, and cannot be, assailed in a collateral proceeding. There is ample authority for the foregoing rule, if limited to the judgment debtor.

But outside of the two cases cited we have been unable to find a single case where it has been applied to the judgment debtor's grantee who held title when the execution issued and the sale thereunder was made. The rule as thus extended is utterly irreconcilable with the doctrine that, when a judgment becomes dormant, its lien is lost as against a mortgage executed by the debtor and recorded during the life of the judgment lien (*Flagg v. Flagg,* 39 Neb. 229), and that, when a dormant judgment is revived, it is not a lien on real estate conveyed by the judgment debtor after the rendition of the judgment and before it had become dormant (*Halmes v. Dovey,* 64 Neb. 122). Even where execution issues during the life of the judgment lien, but the sale made thereunder takes place after the time fixed by statute for the termination of such lien, except in the state of Missouri, it has been uniformly held, both in this country and England, that the title acquired by such sale is precisely the same as though the judgment had never been regarded as a lien, and that such sale does not operate to divest a title acquired from the debtor during the life of the judgment lien. 2 Freeman, Executions (3d ed.), sec. 205; 2 Freeman, Judgments (4th ed.), sec. 394a. In *Tucker v. Shade,* 25 Ohio St. 355, the court said: "It is well settled that the title of a purchaser from the judgment debtor is, on the judgment becoming dormant, discharged from the lien, and that the subsequent revivor of the judgment will not affect such title." We are satisfied that the rule announced and applied in *Gillespie v. Switzer,* and in *Link v. Connell, supra,* is too broad, and that it should be modified and restricted so as not to apply to those whose rights in the property have been acquired from the debtor during the life of the judgment lien.

The fact that the action in which judgment was taken against plaintiff's husband was aided by attachment, and that the judgment contains an order for the sale of the attached property, would not continue the lien beyond the period fixed by statute nor bring the case within the

rule announced in *Herbage v. Ferree, supra*. In that case the court was dealing with a decree in equity entered in a suit where the relief sought and obtained was the foreclosure of a mortgage lien. Here we are dealing with a judgment rendered in an action at law. When the judgment was rendered the attachment lien was merged in that of the judgment, differing from an ordinary judgment lien only in that it related back to the levy of the attachment. A judgment lien is a mere incident and cannot exist independently of the judgment. When the judgment becomes dormant the lien ceases to exist.

Another defense urged to the plaintiff's suit is that the conveyance of the property in question to her was made without consideration and in fraud of her husband's creditors, including the judgment creditor hereinbefore mentioned, and, for that reason, she cannot be heard to assail the validity of a sale made under an execution issued in favor of such judgment creditor. That the plaintiff's husband was insolvent when this conveyance was made is conclusively established. Consequently, the burden is upon the plaintiff to show that the conveyance was made in good faith. *National Bank of Commerce v. Chapman,* 50 Neb. 484. The evidence is uncontradicted that in 1882 the plaintiff's husband was worth more than $2,000,000 over and above his debts. His business was prosperous and not attended by unusual hazards. At that time he made a gift to his wife, the plaintiff in this suit, of a large tract of land in this state. It is not claimed that this gift was made in contemplation of insolvency nor that it was excessive in view of the husband's financial condition and that a part of his wealth had come to him through her. The plaintiff held title to this tract of land until the spring of 1891. At that time her husband and one of the corporations with which he was connected had become involved in debt, and it was arranged between him and the plaintiff that she should sell the land and allow him to use the proceeds temporarily to discharge some of his indebtedness. The sale was made and the

money loaned by the plaintiff to her husband. Her husband's affairs became more and more involved until 1893, when he was forced to mortgage his holdings to raise money and to satisfy his creditors. As he says in his testimony, the properties were put in groups, each covered by a mortgage. The property in suit then belonged to him, and, intending to execute a mortgage thereon to secure a note of $1,200 to be turned over to the plaintiff to secure a part of his indebtedness, he executed a mortgage, describing the property as "lots 1 and 2 of block 15, in the town of Syracuse," etc., instead of lots 1 and 2 of block 15, Gray's Second Trustee's addition to the town of Syracuse, the true description. This note and mortgage were turned over to the plaintiff for the purpose stated. Her husband, unable to meet his obligations, conveyed the fee title to this property to the plaintiff by its true description on the 1st day of June, 1895, which is the conveyance under which she now claims. The evidence adduced by the plaintiff explanatory of the conveyance of the property to her is uncontradicted, and, while some discrepancies are shown, the explanation in the main appears reasonable and straightforward, and sufficient to overcome the presumption arising from the fact that the transaction was between husband and wife. That the money loaned by the plaintiff was derived from a sale of property which she had received as a gift from her husband is immaterial, because the gift was made when he was solvent and not contemplating insolvency, and was not excessive in view of his circumstances at the time. *Morse v. Ruben*, 27 Neb. 145; *Jones v. Clifton*, 101 U. S. 225; *Sexton v. Wheaton*, 8 Wheat. (U. S.) 227. The plaintiff was one of her husband's creditors and he had a right to make a preference in her favor. *Clarke Drug Co. v. Boardman*, 50 Neb. 687; *National Bank of Commerce v. Chapman*, 50 Neb. 484.

In view of the evidence and the law governing this case, as we understand it, the plaintiff is entitled to the relief prayed. It is therefore recommended that the decree of the district court be reversed and the cause

remanded, with directions to enter a decree in favor of the plaintiff.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree in favor of the plaintiff.

JUDGMENT ACCORDINGLY.